UNION TRUST COMPANY *v.* GROSMAN ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 106.   Argued December 20, 21, 1917.—Decided January 7, 1918.

While a husband and wife, domiciled in Texas, were temporarily in Illinois, the former executed his note and the latter her continuing guaranty of payment. Assuming that the guaranty would have been enforced in Illinois, *held,* that comity did not call for its enforcement by the courts of Texas, against the wife's separate property there, if contrary to the public policy of Texas; for it is one thing for a court to decline to be an instrument for depriving citizens belonging to the jurisdiction of their property in ways not intended by the law that governs them, another to deny its

offices to enforce obligations good by the *lex domicilii* and the *lex loci contractus* against those whom the local laws have no duty to protect.

By the law of Texas—the common law modified by statute—a married woman's guaranty of her husband's note is not enforcible against her separate property. In this case note and guaranty were part of one transaction, but the guaranty was a separate instrument executed by the wife alone.

If a contract, made and valid in one State, is unenforcible in the courts of another on grounds of local public policy, it is unenforcible also, for the same reason, in the District Court, sitting in the latter State and having jurisdiction through diversity of citizenship.

228 Fed. Rep. 610, affirmed.

THE case is stated in the opinion.

*Mr. William Hawley Atwell* for petitioner:

The Illinois statute allows a married woman to contract as a *feme sole.* Hurd's Rev. Stats., 1911, c. 68. The note and guaranty in this case were executed and delivered in Illinois, where each was payable, and where the makers were under no legal disability. The place of the contract is, generally speaking, a matter of mutual intention, but the intended place, as determined by legal presumption in some cases and evidentiary circumstances in others, settles all questions as to the legal test of validity and interpretation. The presumption, in the absence of evidence to the contrary, is that the place of making and performance in a physical sense is the place in a legal sense.

The policy of Texas is to extend comity in such a case. *Ryan & Co.* v. *M., K. & T. Ry. Co.,* 65 Texas, 13; *Merrielles* v. *State Bank of Keokuk,* 5 Tex. Civ. App. 483; *Southern Pacific* v. *Dusablon,* 106 S. W. Rep. 767; preamble and emergency clause of Texas Laws, 1913, pp. 61–62; Speer's Law of Marital Rights in Texas. That the contract cannot be regarded as inherently harmful, is evidenced by the fact that contracts of similar nature are permitted

by the written laws of a large portion of the States, and in most others legislation in that direction is progressive, and they are recognized as not inherently bad by substantially all the courts of this country. The Act of 1913 shows that there is no well-defined "public policy" in Texas against the right of its married women to contract, and, under it, it would seem the contract was valid not only in Illinois, but also in Texas. The fact that the wife is guarantor of the husband's note, in itself constitutes an essential joinder between husband and wife, equivalent to the wife becoming "joint maker of a note," which the act permits. [For a discussion of this act see the opinion of the court below, 228 Fed. Rep. 610.]

There is no exception to the general proposition that a contract valid where executed and where to be performed is valid and enforcible in any other nation, even as to nations separated by the seas, save that a contract would not be enforced if there were a well-defined and settled public policy against it. "Public policy," as here understood, means that the contract to be refused life must be vicious, or unjust, or immoral. *International Harvester Co.* v. *McAdam*, 142 Wisconsin, 114; *The Kensington*, 183 U. S. 263; *Insurance Co.* v. *Head*, 234 U. S. 161; *Northern Pacific Ry. Co.* v. *Babcock*, 154 U. S. 190. Manifestly no immorality or viciousness or injustice exists here. That the enforcement of a contract will result in the payment of an honest debt can never be said to be immoral or vicious or unjust. *Brodnax* v. *Insurance Co.*, 128 U. S. 244; *Sutton* v. *Aiken*, 62 Georgia, 741. There must be something inherently bad about it, shocking to one's sense of right—in the judgment of the courts, something pernicious and injurious to the public welfare. *Milliken* v. *Pratt*, 125 Massachusetts, 374; *Garrigue* v. *Kellar*, 164 Indiana, 676; Greenwood on Public Policy, 36. Otherwise the doctrine of comity gives effect to the contract, valid where made, *Hilton* v. *Guyot*, 159 U. S. 113, even as

between independent nations, and much the more readily as between the States of the Union. *Bank* v. *Earle,* 13 Pet. 519; *Bond* v. *Hume,* 243 U. S. 15.

*Mr. Joseph Manson McCormick,* with whom *Mr. Francis Marion Etheridge* was on the briefs, for respondent Minnie Kahn Grosman.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the petitioner in the District Court of the United States for the Northern District of Texas upon two promissory notes made in Chicago by Hiram Grosman and another, and a continuing guaranty executed in the same place by the respondent, Mrs. Grosman, the wife of Hiram Grosman, as part of the same transaction as the earlier note. A decree was rendered for the plaintiff in the District Court, but upon appeal by Mrs. Grosman was reversed as against her by the Circuit Court of Appeals, on the ground that it subjected her separate property to the payment of the demand, contrary to the public policy of the State in which the suit was brought. 228 Fed. Rep. 610. 143 C. C. A. 132. Mrs. Grosman and her husband were domiciled in Texas, as the plaintiff seems to have known, and made the contracts while temporarily in Chicago. We assume for the moment that if she had given the guaranty in Texas it would have been void, and on the other hand that if she had been domiciled in Illinois when she made her promise she would have been bound. The main question is which law is to prevail.

If this suit were brought in Illinois it would present broader issues. On the one side would be decisions that *locus regit actum,* and the consideration that when a woman goes through the form of contracting in an independent State, theoretically that State has the present

power to hold her to performance, whatever may be the law of her domicile. It might be urged that the contract should be given elsewhere the effect that the law of the place of making might have insured by physical force. See *Michigan Trust Co.* v. *Ferry*, 228 U. S. 346, 353. On the other hand it is obvious that practically at least no State would take any steps, if it could, before a breach of an undertaking like this. The contract being a continuing one of uncertain duration the plaintiff had notice that in case of a breach it probably might have to resort to the defendant's domicile for a remedy, as it did in fact. In such a case very possibly an Illinois court might decide that a woman could not lay hold of a temporary absence from her domicile to create remedies against her in that domicile that the law there did not allow her to create, and therefore that the contract was void. This has been held concerning a contract made with a more definite view to the disregard of the laws of a neighboring State. *Graves* v. *Johnson*, 156 Massachusetts, 211, 212.

But when the suit is brought in a court of the domicile there is no room for doubt. It is extravagant to suppose that the courts of that place will help a married woman to make her property there liable in circumstances in which the local law says that it shall be free, simply by stepping across a state line long enough to contract. *The Kensington*, 183 U. S. 263, 269. *Armstrong* v. *Best*, 112 N. Car. 59. *Bank of Louisiana* v. *Williams*, 46 Mississippi, 618. *Baer* v. *Terry*, 105 Louisiana, 479, 480. *Palmer* v. *Palmer*, 26 Utah, 31, 40. See generally, *Seamans* v. *The Temple Co.*, 105 Michigan, 400. Dicey, Conflict of Laws, 2nd ed., 34, General Principle No. II (B), and as to torts, *id.* 645, Rule 177. There is nothing opposed to this view in those decisions in which the courts have enforced similar contracts of women domiciled where the law allowed such contracts to be made. It is one thing

for a court to decline to be an instrument for depriving citizens belonging to the jurisdiction of their property in ways not intended by the law that governs them, another to deny its offices to enforce obligations good by the *lex domicilii* and the *lex loci contractus* against women that the local laws have no duty to protect. *International Harvester Co.* v. *McAdam*, 142 Wisconsin, 114. *Merrielles* v. *State Bank of Keokuk*, 5 Tex. Civ. App. 483. The case of *Milliken* v. *Pratt*, 125 Massachusetts, 374, went to the verge of the law in holding a Massachusetts woman liable in Massachusetts on a contract that she could not have made there, because made by a letter in Maine, although her person remained always within the jurisdiction of Massachusetts. It is safe to conjecture that the decision would have been different if the law of Massachusetts had not been changed before the bringing of the suit so as to allow such contracts to be made. 125 Massachusetts, 377, 383.

Texas legislation is on the background of an adoption of the common law. If the statutes have not gone so far as to enable a woman to bind her separate property or herself in order to secure her husband's debts, they prohibit it, and no argument can make it clearer that the policy of that State is opposed to such an obligation. It does not help at all to point out the steps in emancipation that have been taken and to argue prophetically that the rest is to come. We have no concern with the future. It has not come yet. The only question remaining, then, is whether the court below was right in its interpretation of the Texas law. This was not denied with much confidence and we see no sufficient reason for departing from the opinion of the court below and the intimations of all the Texas decisions that we have seen. *Red River National Bank* v. *Ferguson*, 192 S. W. Rep. 1088. *Shaw* v. *Proctor*, 193 S. W. Rep. 1104. *Akin* v. *First National Bank of Bridgeport*, 194 S. W. Rep. 610,

612. *First State Bank of Tomball* v. *Tinkham*, 195 S. W. Rep. 880.

If the decree would have been right in a court of the State of Texas it was right in a District Court of the United States sitting in the same State. *Pritchard* v. *Norton*, 106 U. S. 124, 129.

*Decree affirmed.*