# J. P. KING, JR., V. HOMER L. BRUCE, ET UX.

No. A1129. Decided April 23, 1947.
Rehearing overruled May 21, 1947.
(201 S. W., 2d Series, 803.)

*Cantey, Hanger, McMahon, McKnight & Johnson* and *R. K. Hanger*, all of Fort Worth, for petitioner.

It was error for the Court of Civil Appeals to hold that the law of Texas did not apply to the contract between the defendants, and that the property was the separate property of Mrs. Bruce when in law and in fact it was community property of both. State v. Barrow, 14 Texas 179; Edrington v. Mayfield, 5 Texas 363; Commissioner of Internal Revenue v. Porter, 148 Fed. (2d) .566.

*Homer L. Bruce, Clara C. Bruce,* pro se, and *Homer L. Bruce,* all of Houston, for respondents.

In support of their contentions respondents cite: McDonald v. Stevenson, 245 S. W. 777; Chace v. Gregg, 88 Texas 552, 32 S. W. 520.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

Homer L. Bruce and Clara C. Bruce are now and were at the time of all the property transactions between themselves involved herein, citizens of, and domiciled in, Texas. They are, and were at all such times, husband and wife and parents of children born of their coverture. The children at the times of the transactions involved were more than twenty-one years of age.

It appears from the declarations of Mr. and Mrs. Bruce and from the record of their property dealings brought under review here, that what they are seeking to do is to so segregate in severalty, or in undivided interests, their community property as that each portion "segrated" will be in Texas the *separate property* of the recipient spouse. They are respondents here and their argument is submitted and signed as follows: "Homer L. Bruce, Clara C. Bruce, Pro se, Homer L. Bruce, Attorney for respondents." Their declared purpose is to provide for Mrs.

Bruce's economic security and to thereby provide for her the benefits incident thereto, but to do so without her being subjected to liability for Federal gift taxes.

Looking to this end, they executed the contract involved in Bruce et ux v. Permian Royalty Co. et al, 186 S. W. (2d) 686. The instrumentality through which they sought to accomplish the desired end was a contract executed in Texas by and between themselves. By means of this contract they attempted by "segregation" of undivided interests in a part of their community property, to divide it (324 shares of stock) between them without transfer of title by either to the other, so as to make 162 shares the *separate property* of each. The Galveston Court of Civil Appeals decided that the attempt was ineffective and pointed out in its opinion that what had been effected was merely "a severance of undivided interests, leaving the title * * * wholly unaffected."

After the Galveston court decided the Permian case adversely to the contentions of Mr. and Mrs. Bruce they went to New York City where on March 12, 1946, they entered into the contract which, together with the physical transactions had there in a New York banking institution in connection with the contract, are before us for consideration in their bearing on the garnishment proceeding primarily involved.

Prior to the execution of the contract at the New York bank on March 12, 1946, Mr. and Mrs. Bruce had on deposit in First National Bank of Ft. Worth, Texas, $5,800.00 community funds. The following statement is incorporated at this point, taken largly from the opinion of the Ft. Worth Court of Civil Appeals: J. P. King, Jr., obtained a judgment against Homer L. Bruce for $2,701.20 on March 19, 1946, and on the following day caused to be issued a writ of garnishment directed to First National Bank of Ft. Worth, Texas, in which the $5,800.00 community fund was on deposit. The garnishee bank (having been served with the writ) answered on April 10th that it did not have any funds or effects in its hands belonging to Homer L. Bruce, but that his wife, Clara C. Bruce, had an account there in her name for $2,900.00 and that the garnishee did not know whether the fund was her separate property or the community property of her husband, Homer L. Bruce; and interpleaded King (petitioner here) and Mr. and Mrs. Bruce (respondents here).

Mr. and Mrs. Bruce answered by pleading that the fund was

Mrs. Bruce's separate property by virtue of the New York contract and the physical transactions had in connection therewith. The transactions in New York prior to executing their contract were that in the presence of Mrs. Bruce and with her consent, Mr. Bruce drew a check on the Texas bank for $5,800.00 and opened an account for that amount in a New York Banking institution. He then drew his check on that account for $4,000.00 and requested that it be paid in 4,000 silver dollars to be placed by the bank in two containers, labeled "Container No. 1" and "Container No. 2" respectively. He then drew his check No. 2, against said account for $1,000.00, and the New York Bank gave him in return therefor two of its cashier's checks, each for $500.00, payable jointly to him and Mrs. Bruce. At the same time and place Mr. Bruce drew on the bank his two checks Nos. 3 and 4, for $400.00 each payable to the Bruces jointly. Mr. and Mrs. Bruce then endorsed one each of said two cashier's checks, and Mr. Bruce's checks Nos. 3 and 4, to each other. They then entered into a written contract between themselves while the two containers and the checks were physically present, and under the terms of the contract, "Container No. 1," with its 2,000 silver dollars and one of the cashier's checks for $500.00 and Mr. Bruce's check for $400.00, were delivered to Mrs. Bruce; and the other "Container No. 2" and the other cashier's check and one of Mr. Bruce's checks were delivered to Mrs. Bruce. Immediately after the execution of the contract and the receipt of the items above mentioned, they each deposited in the New York bank in her and his own names respectively said amounts aggregating to each $2,900.00. In return for each of said deposits, the New York Bank issued to each of the appellees its cashier's check for $2,900.00. Thereafter, on March 14, 1946, Mrs. Bruce opened an account with the garnishee bank by depositing therein the New York Bank's check for $2,900.00. The contract between the parties made in New York and specially pleaded by them contains the following: provisions and recitations, among others: That the parties previously had on deposit in a Texas bank $5,800.00 of community funds; that Mr. Bruce transferred that fund to the New York Bank and there opened an account in his own name. It gives in detail the manner in which Mr. Bruce, by his check withdrew $4,000.00 and how it was paid in 4,000 silver dollars in two containers, and the issuance by the bank of its cashier's checks and the two checks made by Mr. Bruce, and the endorsements thereon, all as pleaded by the Bruces; that the parties desired by said contract that the respective amounts of $2,900.00 each should thereafter become the separate property of each, and did not desire to accomplish this through mu-

tual gifts but desired and intended to accomplish it by contract and transfer between themselves in consideration of the mutual agreements contained; that Mrs. Bruce particularly desired to accomplish the foregoing so that she would own said property as her own separate property instead of continuing to own a one-half interest therein as community property with her husband on account of the many benefits that will accrue to her as a result of the contract. The contract recited that it was wholly executed and performed in New York and that the parties intended that the laws of New York, including the common law, the statutory provisions, and the decisions construing same as announced by the courts (all of which were known to the parties) should apply, govern and control the validity and effect of the contract and the title to the properties acquired by each thereunder. The contract stated that in consideration of the recitals therein, each of the parties "bargains, sells, transfers and assigns" to the other the respective containers of 2,000 silver dollars, the New York Bank's cashier's check and one of those of Bruce to become his or her separate property. The pleadings of the parties have been stated in part and are sufficient to raise all points contended for by the Bruces.

Petitioner King admitted the occurrence of the New York transaction, including the execution of the contract and the transactions had in connection therewith, both prior and subsequent to its execution; but denied, among other things, that the $2,900.00 in the Texas bank deposited there in the manner detailed in that part of the opinion of the Court of Civil Appeals above referred to, was Mrs. Bruce's separate property. He pleaded that the fund *was not acquired by Mrs. Bruce in any manner provided for by Section 15, Article XVI of the Texas Constitution or Article 4614 of the revised civil statutes of this state,* so as to become her separate property; and that the New York contract disclosed on its face that it violated, as between the Bruces and their children, article 4610 of the revised civil statutes in that it altered the legal order of descent of the $5,800.00 community fund under the law of Texas; and further, pleaded in effect that a contract similar in terms and import to the New York contract, together with the transactions had in connection therewith, would not be effective to exempt the $2,900.00 fund from the garnishment levy in Texas; and that the procedure resorted to was contrary to the public policy of this state and should not be recognized and enforced by the courts of this state.

The trial court sustained all positions taken by Bruce and

his wife, and held, notwithstanding they were citizens of Texas and domiciled in Texas, that the $2,900.00 (in virtue of the New York transactions and contract) was the wife's separate property, and denied petitioner any relief in his present attempt to collect his judgment against Homer L. Bruce; and on June 3, 1946, entered its judgment, the concluding paragraph of which is as follows:

"It is ORDERED, ADJUDGED and DECREED that the twenty-nine hundred dollars ($2,900) owing to the defendant, Clara C. Bruce, as represented by her three bank deposits with the garnishee known and designated as 'Clara C. Bruce Account A', 'Clara C. Bruce Account B', and 'Clara C. Bruce Account C', are her separate property, and that the plaintiff has no lien upon or right or claim against the same in any manner on account of any indebtedness owing to him by the defendant, Homer L. Bruce, on account of the judgment obtained by him against the defendant, Homer L. Bruce, and described in plaintiff's application for writ of garnishment in this cause against the garnishee, and that said garnishee be and it is hereby ordered to pay the said full sum of twenty-nine hundred dollars ($2,900) to the defendant, Clara C. Bruce, as her separate property and that the plaintiff recover nothing in this cause and that the said garnishee and the defendants, Clara C. Bruce and Homer L. Bruce, recover of and from the plaintiff all of their costs herein incurred, * * *."

Following the rendition of the judgment the trial court filed findings of fact and conclusions of law. The 6th conclusion of law is as follows:

"(a) Even if said contract should literally be prohibited by the provisions of Section 15 of Article XVI of the Constitution of Texas or by Article 4613 and 4614 of the Revised Civil Statutes of Texas, nevertheless *owing to the many benefits to the defendant Clara C. Bruce arising from said contract* and owing to the fairness of said contract *in so far as she is concerned,* said contract is not prohibited by said provisions of the Constitution or articles of the Statutes of Texas, and is so fair and equitable *to the defendant Clara C. Bruce* that it would appeal to the conscience of this court and would be held to be a valid contract and the properties purported thereby to be conveyed to her as her separate property would be her separate property.

"(b) Said contract would not be contrary to the provisions of Section 15 of Article XVI of the Constitution of the State of

Texas or to Articles 4613 and 4614 of the Revised Civil Statutes of Texas because said section and articles applied *only to the original* $5,800 dealt with in said contract at the time of its *original acquisition* by the defendants, which became at its original acquisition their community property, but did not apply to the said $5,800 *after it was originally acquired* by the defendants as their community property, and said section and articles would not prohibit these defendants from executing said contract and carrying out its performance, *all in the State of Texas,* and would not prevent the property thereby *transferred* in the State of Texas to the defendant Clara C. Bruce *under said contract* and its performance from becoming her separate property.

"(c) Said contract was not and would not violate or be contrary to the provisions of Article 4610 of the Revised Civil Statutes of Texas." (Italics ours).

The Ft. Worth Court of Civil Appeals affirmed the judgment of the trial court and upheld all of the contentions of Mr. and Mrs. Bruce except their contention that under such proceedings in Texas as were had in New York the $2,900.00 would become, in the absence of transfer of title, the separate property of Mrs. Bruce. 197 S. W. (2d) 830. The court held that the "effect and validity" of the New York contract was governed by the laws of New York and not by those of Texas; that Mrs. Bruce acquired as her separate property, title to the $2,900.00 received by her at the time of the full performance of the contract; and that "having thus acquired the title it continued to remain her separate property after she brought it back to Texas and deposited it in the garnishee bank."

■ We cannot agree. Constitution of Texas, section 15, article XVI; Arnold v. Leonard, 114 Texas 535, 273 S. W. 799. In the *Arnold* case the Court of Civil Appeals certified to this court the question of whether the amendment of Art. 4621 by the regular session of the 37th Legislature which undertook to declare the rents and revenues of the wife's separate real property, was violative of the cited section and article of our state constitution in that it attempted to create a class of property not thereby provided for. We quote from the opinion, omitting as noted, the parts not pertinent at this point:

"We have no doubt that the people in adopting the Constitution in 1845, as in 1876, understood that it was intended to put the matter of the classes of property constituting the wife's separate estate beyond legislative control. Thereby both the wife

and the husband were given constitutional guaranty of the status of all property derived by means of or through the wife. * * * It is a rule of construction of constitutions that ordinarily, when the circumstances are specified under which any right is to be acquired, there is an implied prohibition against the legislative power to either add to or withdraw from the circumstances specified, (citing authority). * * * Hence, when the Constitution says that as to property, not owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specified modes, *the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property.* * * * Had it been the purpose of the Constitution to empower the Legislature to add to the wife's separate property it is hardly to be doubted that the power would have been conferred, when the framers of the Constitution were expressly authorizing the enactment of laws to more clearly define the rights of the wife in relation to both her separate property and community property. * * * With the court declining to give effect to any attempt before 1917 at enlargement by statute of the wife's constitutional separate estate, we cannot feel bound to acquiese in any supposed successful, long-continued, and unchallenged assertion of such legislative power. * * * These conclusions harmonize with the conceptions underlying the Texas decisions that the wife's capacity to own and hold property is as complete as that of the husband; that each martial partner owns an estate in the community property equal to that of the other partner; and that statutes empowering the husband to manage the wife's separate lands and community assets make the husband essentially a trustee, accountable as such to the separate estate of the wife, or to the community. Edrington v. Mayfield, 5 Texas 366 to 368; Speer's Law of Martial Rights in Tex., Sec. 296; Richardson v. Hutchins, 68 Texas. 89, 3 S. W. 276; Dority v. Dority, 96 Texas 224 to 226, 71 S. W. 950, 60 L. R. A. 941; Waggoner Bank & Trust Co. v. Warren, 111 Texas, 322, 234 S. W. 387. * * * The sum of our conclusions is: The Legislature, in defining the wife's rights in and to her separate property and property held in common with her husband, could lawfully deprive the husband of the power granted him for many years to manage and control the wife's separate property and portions of the community property which were derived from the use of the wife's separate property or from her personal exertions, and could confide the management, control, and disposition thereof to the wife alone, and could exempt, not only her separate property, but said portions of the community from payment of the husband's debts.

In making this grant of enlarged rights to the wife, and working the corresponding diminution in rights to be exercised by the husband, the Legislature was lawfully defining the wife's rights in both her separate estate and common property, as expressly authorized by the Constitution. *But the Legislature could not divest the husband of all interest in and to property which, under the Constitution, was guaranteed either to the community or to the husband's separate estate, and use the same to enlarge the wife's separate estate beyond its constitutional limits.* * * * We therefore answer to the certified questions that so much of the act of 1917 and of the act of 1921 as undertook to declare the rents and revenues of the wife's separate realty *to be her separate estate* was violative of section 15 of article 16 * * *." (Italics ours).

■ We accept for the purpose of this suit the statement of the court of civil appeals that under the law of New York as applicable to "Domestic Relations" a wife may own real or personal property in her own right and manage and control same as though she were unmarried; but we are not in accord with the court's holding *under the present facts* that the "effect and validity" of the New York contract "is governed by the laws of New York and not those of Texas." Movables held by the spouses in community at the time the New York dealings were had continued to be community when taken into that state and subjected to the dealings there had pursuant to the contract of the parties made there. Not only were the Bruces citizens and domiciliaries of Texas when the New York transactions were had, but they were had with the declared purpose of securing to Mrs. Bruce enjoyment in Texas of the property segregated to her and the benefits in Texas incident to its ownership. Under these facts the dealings with the property in New York in no wise affected its character as property so far as the law of this state is concerned. The "segregation" accomplished nothing toward bringing about the declared purpose of Mr. and Mrs. Bruce. The law of Texas remained applicable regardless of the dealings of the parties. Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 62 L. Ed. 368; Restatement, Conflict of Laws, Sec. 292.

Mr. Bruce, as attorney for his wife and himself, advances the proposition not only that the New York contract is valid and accomplishes the declared purpose of respondents, but that such a contract would be valid in Texas for that purpose. He insists upon a construction of section 15 of article XVI of the constitution, which he refers to as an equitable construction. While admitting the case is one of first impression, it is argued that on

equitable grounds this court should uphold the contract made in New York so as to allow the husband and wives of Texas to provide for the economic security of Texas wives and secure for them the benefits incident to such security; and says there is ample room for such construction of the above constitutional provision within this court's prior decisions. It is insisted that there should be no impediment in law to prevent the husband while solvent from converting part of the community property into the separate property of his wife so that it could not be reached by future creditors or be left subject to the adverse vicissitudes of the husband's future financial ventures; and that it is a hardship under the Texas law not to permit such segregation by contract between husband and wife (particularly if the husband dies with an involved estate) since the entire estate would necessarily stay in the control of the husband's estate during administration and nothing could be made available out of their joint earnings for the surviving wife's needs. We quote the following from the argument:

"During more than a quarter of a century of the practice of law we have seen many instances in which a widow, though accustomed to a comfortable standard of living during her husband's life, suddenly discovered upon his death that he was hopelessly involved financially with the result that she was reduced to a state of penury. In the past few years the whole nation has become conscious as never before of the importance of security in old age. We now have the Federal and State old age pensions. Retirement plans for employees have swept the nation, and there is hardly a corporation of any size that does not have a pension or retirement or thrift plan to take care of its employees when their working days are over."

It is urged finally that while under the Texas law *either spouse may give to the other as separate property any part of the community property they desire* and it will become the separate property of the donee, that nevertheless, after such gift transactions have been consummated, the recipient spouses have no greater value as to property holdings than they had before. inasmuch as *a Federal gift tax must be paid upon each gift.*

We cannot agree with the holding of the court of civil appeals that when the $5,800.00, community property, was moved to New York by Mr. and Mrs. Bruce their community interests were affected, under present facts, by "some new dealings (in this case the New York transactions), and that the effect and validity of the contract as between the parties became subject to the laws of New York and not those of Texas.

Bearing in mind that Mr. and Mrs. Bruce are citizens of Texas and domiciled in Texas, we hold that under the law of Texas Mrs. Bruce did not acquire title to the $2,900.00 under the laws of New York in virtue of the contract made there; that it was not thereby changed into another class of property from what it was when acquired in this state (Arnold v. Leonard, supra), that it was not her separate property when deposited in the garnishee bank, and that it remained, after deposit, the community property of both spouses. Edrington v. Mayfield, 5 Texas 363; McKay, Community Property (2d ed.), Secs. 636, 637 and 648; State v. Barron, 14 Texas 179. The segregation of the community was made with a view to its being enjoyed by Mrs. Bruce in this state. As stated in Stone et vir v. Phillips: "The mere fact that she (Mrs. Stone) left Texas and had resided temporarily in Washington prior to her marriage would not destroy her domicile in Texas, nor forfeit her Texas citizenship, so long as there was an intention on her part to retain her domicile in this state. 15 Tex. Jur. 712, 713; 28 C. J. S. 30; Am. Jur. 604; McIntyre v. Chappell, 4 Texas 187; Pecos & N. T. Ry. Co. v. Thompson, 106 Texas 456, 167 S. W. 801."

■ The rule just stated does not militate against the rule, generally speaking, that the validity of contracts is controlled by the law of the state where made and performed. The rule of the domicile predominates as between the spouses. Taylor v. Leonard (Civ. App.), 275 S. W. 134. The court speaking in the cited case of the general rule of control by law of the state where the contract was made, said:

"That rule has, however, its exceptions. It will not be observed and applied when to enforce a foreign contract, according to the provisions of the foreign laws, will contravene some established rule of public policy of the state of the forum. Union Trust Co. v. Grosman, 245 U. S. 412, 28 S. Ct. 147, 62 L. Ed. 368; 1 Wharton on Conflict of Laws (3d ed.), 275."

■ It is not necessary (in view of the fact that it is transfer and gift taxes which respondents desire to obviate) to discuss the well recognized law of this state under which the husband and wife may transfer by gift or otherwise the community property in existence so long as the transfers are fair, not induced by fraud, duress or undue influence, and with due regard for the rights of creditors. Nor is it necessary to discuss the force and effect of the statutes referred to in the court of civil appeals and in the contentions of the parties.

While the hardships pointed out by counsel for respondents

doubtless occur with frequency, the remedy therefor is not a judicial function. A fundamental change in state policy obviously cannot be made through the medium of the considerations urged in paragraph (a) of the 6th conclusion of law of the trial court, supra. If the electorate of the state desire a change of the state policy under consideration, it can be made through the legislative and constitutional channels provided by law.

The judgment of the court of civil appeals affirming that of the trial court is reversed and judgment is here rendered declaring the $2,900.00 deposited by respondent, Clara C. Bruce, in the garnishee bank, is the community property of both respondents; and that the garnishee be ordered to pay petitioner King the amount of the judgment obtained by him against Homer L. Bruce, referred to and described in the application for writ of garnishment, and costs of suit, all as prayed for in petitioner's first supplemental petition.

It is so ordered.

Opinion delivered April 23, 1947.

Rehearing overruled May 21, 1947.