Edna REED, Appellant,

v.

Arthur J. REED et al., Appellees.

No. 14988.

Court of Civil Appeals of Texas. Dallas.

Sept. 30, 1955.

Rehearing Denied Oct. 28, 1955.

Gullett & Gullett and Robert L. Doss, Denison, for appellant.

Freeman, Wolfe, Henderson & Bryant, James E. Henderson, Sherman, for appellees.

YOUNG, Justice.

This controversy involves the ownership of certain Savings Certificates, Edna Reed, widow of Mack C. Reed, deceased, claiming then as her separate property; Arthur Reed and other children by his first wife contending that same continued to be assets of the Mack C. Reed community estate. These children (three sons and a daughter) had appealed from a County Court ruling adverse to their contention, and upon District Court trial the items of property in question were determined to be community property, as to which the surviving children were entitled to a one-half interest; the widow Edna Reed here complaining of such judgment.

The appeal is upon an agreed statement of facts accurately summarized in brief of appellant as follows: Mack C. Reed died November 22, 1952 with no children born to his marriage with Edna Reed. His legal heirs surviving him were his wife and above mentioned children of a prior marriage, Mrs. Maxine Reed Hill, Arthur J., Paul, and John D. Reed; Mrs. Edna Reed qualifying as Temporary Administratrix and the litigation above noted following in sequence.

On October 19, 1950, deceased and appellant had purchased fifteen shares of paid-up stock (value $1,500) in the Metropolitan Building & Loan Assn. of Dallas, receiving its Certificate No. 7368; on same date they executing and delivering to the Company an instrument designated "Membership of Joint Holders, with Right of Survivorship," and providing in part: "It is understood and agreed that the shares hereby subscribed for and issued by the Association, and all monies paid, or that may hereafter be paid thereon by either party hereto, as well as all accumulations thereon, are to be held by the Association for our joint account, as joint tenants with the right of survivorship, as at common law, and not as tenants in common; that the funds represented by said shares may be withdrawn by either party hereto before or after the death of either, subject to the laws of the State of Texas, and to the By-Laws of the Association, and either party is authorized to pledge the same as collateral security to a loan and either may draw the dividends thereon." They likewise purchased $2,500 worth of stock in the Oak Cliff Savings & Loan Association, viz.: On July 9, 1952, ten shares, Certificate No. 2718, and on July 16, 1952, fifteen shares, Certificate No. 2749; executing and delivering to the Company an instrument styled, "Application, Signature Card, and Proxy," along with another paper designated "Joint Account Agreement," providing in part: "(1) That the shares hereby subscribed for shall be issued by the Association in the joint names of the undersigned as joint tenants with right of survivorship as at common law and not as tenants in common, and (2) that all monies paid, or that may hereafter be paid thereon, by either party hereto, and all additions thereto and accu-

mulations thereon are and shall be held by this Association for the joint account of the undersigned as joint tenants with right of survivorship as at common law and not as tenants in common, and (3) that the redemption or withdrawal value of such account and dividends or other rights relating thereto may be paid or delivered, in whole or in part, to either of the undersigned and either is authorized to pledge said account as collateral security for a loan." On face of each of above mentioned Certificates it was recited that same was issued to "M. C. Reed and/or Edna Reed, or the Survivor of either, as Joint Tenants and not as Tenants in Common."

Earlier, in March and April of 1946, deceased and appellant had made two deposits with the Postal Savings System, one of $1,500, the other of $1,000. 39 U.S.C.A. § 754, setting up the Postal Savings System, provides: "Opening accounts and making deposits. Accounts may be opened and deposits made in any postal savings depository established under this chapter by any person of the age of ten years or over, in his or her own name, and by a married woman in her own name and free from any control or interference by her husband; but no person shall at the same time have more than one postal savings account in his or her own right." Rules and regulations of the Postal System are to like effect; it being stipulated by the parties that, under said Federal regulations, "one person may only deposit and be issued certificates for an amount not exceeding $2,500.00, but said system will accept and issue certificates for a deposit of $2,500.00 in the name of a husband and an additional $2,500.00 in the name of a wife." Still earlier than the date of the investments just listed, Mack C. Reed had deposited with the Postal Savings System in his own name the sum of $2,500, which item is not involved in this appeal; having been accounted for by appellant in her final report as community property. It is undisputed that the source of all above investments (Building & Loan and Postal) was from community funds.

Appellant complains of the trial court's ruling that the foregoing assets remained a part of the community estate; in other words, the court's denial of her claim to the whole thereof as separate property because of: (1) "The building and loan association stock in question having been made the subject of a specific agreement of joint tenancy with right of survivorship between deceased and appellant and the associations involved, and appellant being the owner thereof under said agreement's terms"; and (2) "The postal savings certificates in question representing deposits of appellant in her own name and free from any control or interference by her husband, and it being unlawful for the deposits to be made or accepted other than in her own individual right."

It is argued that the arrangements of joint tenancy with right of survivorship set up by this husband and wife with the loan associations were legal and enforceable transactions; appellant relying chiefly on the holdings of Chandler v. Kountze, Tex.Civ.App., 130 S.W.2d 327 (writ ref.), and Shroff v. Deaton, Tex.Civ.App., 220 S.W.2d 489, for the contentions made. The Galveston Court in Chandler v. Kountze, supra [130 S.W.2d 329], has construed art. 2580, Vernon's Ann.Civ.St., abolishing the common-law doctrine of jus accrescendi, to mean that: "While the wording of Article 2580 indicates a legislative intent to abolish the relationship of joint tenancy *where it would otherwise have been created by law,* including the common-law doctrine of survivorship, there is nothing in the subject matter of the act which would, in our opinion, justify the presumption that the legislature intended to thereby prevent the parties to a contract, a will, or a deed of conveyance, from providing among themselves that the property in question should pass to and vest in the survivor as at common law." (Emphasis ours.) In Shroff's appeal, the rule above emphasized was discussed as having application to a transaction between husband and wife involving building and loan stock; the Texarkana Court finally holding in effect that if it be mistaken in applicability of Chandler v. Kountze, the case should nevertheless be affirmed on basis of

a valid gift of the stock, made by Deaton to the surviving wife shortly before his death.

On the other hand, the following rules and construction of relevant statutes are regarded as controlling of the transactions here in question: (1) Property of a wife takes its status as separate or community property at time of its acquisition. Henry v. Reinle, Tex.Civ.App., 245 S.W.2d 743; Van v. Webb, Tex.Civ.App., 237 S.W. 2d 827; Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777. (2) "Separate property of either spouse may be conveyed to the other in such way as to become his or her separate property, and community property may be so conveyed by the husband to the wife as to make it hers separately, but spouses cannot by mere agreement partition and transfer their community property one to the other and thereby change the class of the estate which the law fixes in each. Vernon's Ann.Civ.St. arts. 4613, 4614, 4616; Vernon's Ann.St.Const. art. 16, § 15." Bruce v. Permian Royalty Co., Tex. Civ.App., 186 S.W.2d 686, syl. 5; King v. Bruce, 145 Tex. 647, 201 S.W.2d 803, 171 A.L.R. 1328. (3) In McDonald v. Stevenson, Tex.Civ.App., 245 S.W. 777, 781 (writ ref.) art. 4610, V.A.C.S., has been construed as prohibiting a change, by agreement of husband and wife, of community property into separate property of each; the court holding that "While the laws of Texas have ever permitted parties intending to enter into the marriage state to make and enter into whatever marriage contracts they please, provided they were not against good morals or contrary to some fixed rule of law, still it has always been the policy of the state to prohibit any such contract that would alter the legal order of descent. Vernon's Sayles' Civil Statutes, art. 4617. Hence, if they are not permitted to do so by marriage contracts before marriage, a for-

tiori, they cannot do so after marriage and pending the marital relation, for it is contrary to the policy of the laws of this state for a husband and wife to make contracts inter sese which are intended to, and if given effect would, change the order of descent, or the status of the property."

Consistent with the foregoing decisions, we must conclude that the rule of Chandler v. Kountze, supra, cannot be thus extended to effectuate a partition of community property with result of separate ownership by appellant survivor; at least, not in the manner here attempted.[1]

Virtually, the only question involved as regards these Certificates is of whether the transactions in question amounted to a valid gift or trust under which the interest of the husband passed to appellant wife. In the application for the Certificates, it is provided that dividends, or the principal sum, may be paid or delivered in whole or in part to either of the applicants, and that either is authorized to pledge the account as security for a loan. During his lifetime, Mack C. Reed therefore retained in himself full power, coextensive with the wife, to withdraw any part of the dividends or principal represented by the Certificates of Stock. A complete divestiture of power of control is essential to the validity of an inter vivos gift. Harmon v. Schmitz, Tex.Com.App., 39 S.W.2d 587; Peterson v. Weiner, Tex.Civ.App., 71 S.W. 2d 544 (writ ref.); Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975; Olive v. Olive, Tex.Civ.App., 231 S.W.2d 480.

Likewise concerning point 2—the Postal Savings Certificates. Mack C. Reed had already deposited in his own name the sum of $2,500 in the Postal System. Later, out of community funds, the sum of $2,500 was deposited in name of the wife;

---

1. In this connection, we take cognizance of the 1948 Amendment of art. 16, sec. 15, State Constitution, Vernon's Ann.St., supplemented by 4624a, V.A.C.S., permitting a transmutation of community property into separate property by voluntary partition. The requirements (both con-

stitutional and statutory) incident to such a transaction between husband and wife were not observed in the instant case; for which reason the Amendment is deemed inapplicable and is not further noticed.

which amount was the maximum permitted for deposit in the name of any one depositor. The mere fact that community moneys are thus deposited in name of the wife does not establish a gift of the fund such as would result in separate ownership by the latter. Particularly so, in view of the husband's prior deposit of community funds in his own name to the permitted maximum; the trial court's conclusion of no intended gift being clearly in accord with the evidence. In 21 Tex.Jur., p. 64, touching sufficiency of evidence to establish intent of a donor, since deceased, to make a gift, the author states: " * * * To support the alleged gift, there must be a preponderance of evidence that the property was in fact given. Thus where it is left uncertain whether the owner of property gave it to the claimant or merely evinced an unexecuted intention of giving, the evidence is insufficient to establish a gift." See also Wellborn v. Odd Fellows B. & E. Co., 56 Tex. 501; Stewart v. Tolar & Daniel, Tex. Civ.App., 250 S.W. 274.

■ Nor does the Federal regulation that deposits made by a married woman should be "in her own name and free from interference by her husband," bear any significance other than to facilitate a payment by the Postal System; having nothing to do with title to the fund when paid to the depositor. As observed by counsel for appellees: "Naturally the Postal Savings Department does not wish to be concerned with rival claims to a fund. Appropriate regulations have, therefore, been promulgated permitting payment to the named depositor even though the depositor be a married woman or a child ten years or more of age. The deposit in issue in this case is 'in her own name and free from any control or interference by her husband' so far as the Postal Department is concerned." And if a violation of Federal law and statutes be involved in the second deposit of community funds by Mrs. Reed, the only penalty exacted would be loss of interest on credits in excess of $2,500. In Zorich v. Zorich, 119 Ind.App. 547, 88 N.E. 2d 694, 699, under similar facts, the same Federal laws and regulations were construed. There a father had deposited money with the Postal Savings Department in the name of his two sons, already having a deposit in his own name; and for his children to hold in trust for him was in violation of the statute. The depositor's sons in such case contended that because of this infraction, the true owner of the fund could not recover from the persons in whose names the deposits were made. The contention was overruled, the Indiana appellate court holding, after quoting sections 754 and 756 of 39 U.S.C.A.: " * * * It does not appear to us that in order to protect the public policy or to accomplish the purpose of the Postal Savings law that it is necessary that appellee's trust arrangement with appellants should be void. It is to be observed that § 756 of the Postal Savings law, supra, provides the consequences of a person having more than one account or more than $2500.00 on deposit at any one time; and that the consequences [are] merely that interest will not be paid on credits in excess of $2500.00 and, that part of said section which reads as follows: 'and non-interest-paying deposits shall not be accepted.' It appears to be directory only to the Postal Savings agents and employees."

■ Lastly, it is argued that investment contracts made by husband and wife in nature of joint tenancy with right of survivorship, are not contrary to the public policy of this State; the statutes, art. 881a–23 and art. 342–710, Texas Banking Code, Vernon's Ann.Civ.St., even authorizing such agreements in writing.[2] In this

2. These statutes provide: Art. 881a–23: "Shares or share accounts issued by any building and loan association organized under the laws of this State, or by any Federal savings and loan association domiciled in this State, in the name of two or more persons, or to two or more persons or the survivor of either, may be withdrawn on the signature of either party to whom such shares or share accounts were issued, and no recovery shall be had against such association for amounts so paid. When shares or share accounts are issued in the name of two

connection, we may take judicial notice of the fact that joint tenant accounts with right of survivorship are types of investments generally accepted by Texas Banking concerns, and building and loan associations in particular. The practice has been approved in Chandler v. Kountze, supra, as consistent with the provisions of art. 2580; the issue here narrowing to whether a husband and wife may, by agreement, short of a gift (but not in terms of the 1948 Constitutional Amendment), transform community property into a joint tenancy with different incidents of descent and control. Appellant's point maintaining the affirmative thereof has been heretofore overruled.

Appellant points to dire consequences that would follow our affirmance of the trial court's judgment in this regard; financial institutions having already paid out thousands of dollars on the basis of agreements by husband and wife for joint tenancy with

right of survivorship. But art. 881a–23 and art. 342–710 intervene as full protection to institutions that pay out funds on survivorship accounts; the corporate payor not being at all concerned with the ultimate ownership of the deposit. The court in Pruett v. First Nat'l Bank of Temple, Tex.Civ. App., 175 S.W.2d 658, 663, expressly so holds: "* * * The deposit contract was that the bank might pay the money to either of the depositors during their lifetime, and to the survivor after the death of either. In consequence the bank was not concerned with the ultimate ownership of the deposit, or as to the application to be made of it after it was withdrawn but under the terms of the statute (art. 541d) and the Silsbee Bank case, supra could pay the money to either depositor during their lifetime and to the survivor after the death of one of them. * * *"

The judgment of the District Court is in all respects affirmed.

---

or more persons or in the name of their survivor, the survivor of either party shall have power to act in all matters relating to such shares or share accounts, whether the other person or persons named in such shares or share accounts be living or dead. Such joint account shall create a single membership in such association, and the repurchase or withdrawal value of shares or share accounts issued in joint names and dividends thereon, or other rights relating thereto, may be paid or delivered in whole or in part, to any of such persons who shall make requests therefor, whether the other person or persons be living or dead. The payment or delivery to any such person, on a receipt or acquittance signed by any such person, to whom any such payment or any such delivery of rights is made, shall be a valid and sufficient release and

discharge of any such association for the payment or delivery so made. Acts 1929, 41st Leg., 2nd C.S., p. 100, ch. 61, § 24; Acts 1939, 46th Leg., p. 76, § 1."

Art. 342–710: "A bank may pay a present or future deposit, payable to or on the order of (a) any one of two or more persons, or (b) a minor, married woman, or other person under disability, or in form payable to or on the order of one person, for the benefit of or in trust for another, without the terms of the trust being disclosed to the bank in writing, to any one of such joint depositors (before or after the death of the other joint depositor or depositors), or to such minor, married woman, or other person under disability, or, on the death or disability of the trustee, to the beneficiary of such trust. Acts 1943, 48th Leg., p. 154, ch. 97, subch. VII, art. 10."