Ronald Dee BECK, Appellant,

v.

Lillian M. BECK, Appellee.

No. 05–89–00913–CV.

Court of Appeals of Texas, Dallas.

June 15, 1990.

Rehearing Denied July 27, 1990.

James Morris, Robert W. Minshew, Kennedy Minshew Campbell & Fry, Sherman, for appellant.

Richard Harrison, Staci Johnson, Henderson Bryant & Wolfe, Sherman, for appellee.

Before WHITHAM, OVARD and WHITTINGTON, JJ.

## OPINION

WHITHAM, Justice.

The controversy centers on the status of earnings and income from separate property deposited from time to time after marriage in the wife's separate bank accounts. If the hereinafter quoted paragraph four in a prenuptial agreement is valid, the earnings and income are the separate property of the wife. If invalid, the earnings and income are community property. Therefore, this appeal presents the issue of whether paragraph four of a prenuptial agreement executed October 26, 1977, is void as violating article 16, section 15 of the Texas Constitution as the Constitution then provided. See TEX. CONST. Art. XVI, § 15 (as amended 1948; amended 1980, 1987). In his fourth point of error, appellant, Ronald Dee Beck, individually and as independent executor of the estate of Audrian L. Beck, contends that the trial court erred in granting summary judgment in favor of appellee, Lillian M. Beck, because paragraph four of the prenuptial agreement was void as violating article 16, section 15 of the Texas Constitution as it provided on October 27, 1977. We disagree. We conclude that paragraph four of the prenuptial agreement is valid. We overrule Ronald's fourth point of error. Because our ruling on Ronald's fourth point of error disposes of this appeal, we conclude that we need not address Ronald's first three points of error involving limitation questions arising under Lillian's defensive allegations. Accordingly, we affirm.

On November 1, 1977, Audrian L. Beck married Lillian Massingale. At the time of their marriage, Audrian and Lillian were elderly. They each had previously been married; Lillian's first husband died a number of years earlier, while Audrian had only recently divorced his first wife. Both Audrian and Lillian had adult children from their prior marriages. Lillian had accumulated a considerable amount of property prior to her marriage to Audrian, most of which was derived from her first marriage. In anticipation of their marriages, Audrian and Lillian entered into a marital property agreement on October 26, 1977. This agreement was drafted by Lillian's attorney and reviewed by Audrian's attorney. Audrian and Lillian executed this agreement before Audrian's attorney, who notarized their signatures. The agreement was prepared at the instance of both Audrian and Lillian. Paragraph four of the agreement provides:

> Notwithstanding that under the laws of the State of Texas the income from respective separate properties of Audrian and Lillian will be community property, they hereby agree that all the properties of every kind and nature, real and personal, held or standing in the name of only one of them shall be considered as a separate property of the one of them in whose name such property is held or stands, and that only properties, whether real or personal, held or standing in their joint names shall be considered as community property. In furtherance of and as an example of the foregoing, Audrian and Lillian intend to have separate bank accounts, each of which shall be considered a separate property of the one of them in whose name any such account stands. In addition, they intend to have one or more joint bank accounts, and if and to the extent that they may do so, the funds therein shall be regarded as community property.

After their marriage, Audrian and Lillian lived together until Audrian's death on March 3, 1981. On April 10, 1981, Audrian's last will and testament was admitted to probate. Also on April 10, 1981, letters testamentary were issued to Ronald appointing him independent executor of Audrian's last will and testament. In addition to his appointment as independent execu-

tor, Ronald was designated the sole beneficiary of Audrian's estate. Audrian made this designation pursuant to an agreement existing between Audrian and Lillian that they would leave nothing to each other.

■ On October 26, 1977, article 16, section 15 of the Texas Constitution provided:

Sec. 15. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, shall be the separate property of the wife; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband; provided that husband and wife, without prejudice to pre-existing creditors, may from time to time by written instrument as if the wife were a feme sole partition between themselves in severalty or into equal undivided interests all or any part of their existing community property, *or exchange between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property, whereupon the portion of interest set aside to each spouse shall be and constitute a part of the separate property of such spouse.* This Amendment is self-operative, but laws may be passed prescribing requirements as to the form and manner of execution of such instruments, and providing for their recordation, and for such other reasonable requirements not inconsistent herewith as the Legislature may from time to time consider proper with relation to the subject of this Amendment. Should the Legislature pass an Act dealing with the subject of this Amendment and prescribing requirements as to the form and manner of the execution of such instruments and providing for their recordation and other reasonable requirements not inconsistent herewith and anticipatory hereto, such Act shall not be invalid by reason of its anticipatory character and shall take effect just as though this Constitutional Amendment was in effect when the Act was passed. As amended Nov. 2, 1948.

TEX. CONST. Art. XVI, § 15 (as amended 1948; amended 1980, 1987) (emphasis added). Article 16, section 15 was amended effective November 2, 1948, to add the "exchange" of community interest provision as a direct result of the Supreme Court's decision in *King v. Bruce*, 145 Tex. 647, 201 S.W.2d 803, *cert. denied*, 332 U.S. 769, 68 S.Ct. 82, 92 L.Ed. 355 (1947). *See* TEX. CONST. Art. XVI, § 15, interp. commentary (Vernon 1955). The amendment was self-operative. *See* TEX. CONST. Art. XVI, § 15 (as amended 1948). Under the provisions of the original version of article 16, section 15, no partition of the community estate was permitted. *See Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925). Thus, the *King* Court held that spouses could not escape the provisions of article 16, section 15 even by contracting (and actually completing a transfer) to partition the community estate outside of the State of Texas if Texas is the marital domicile. *See King*, 145 Tex. at 657, 201 S.W.2d at 809. The Supreme Court, recognizing the hardships incumbent in article 16, section 15, gave the following invitation:

If the electorate of the state desire a change of [article 16, section 15], it can be made through the legislative and constitutional channels provided by law.

*King*, 145 Tex. at 658, 201 S.W.2d at 809. In a reporter's note following *King* in the Texas Reports, it is noted that a proposed Constitutional Amendment was submitted to the electorate, "authorizing the husband and wife to enter into written agreement partitioning between themselves all or any part of their community property." 145 Tex. at 658, 201 S.W.2d 803. Such amendment was enacted on November 2, 1948. We interpret paragraph four under article 16, section 15 of the Texas Constitution as it provided on October 26, 1977. The laws existing at the time a contract is made become a part of the contract and govern the transaction. *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex.1987). Laws which subsist at the time and place of the making of a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.

*Central Educ. Agency v. George West Indep. School Dist.,* 783 S.W.2d 200, 202 (Tex.1989) (on motion for reh'g).

■ In the present case, *Lillian* contends that the "exchange" language emphasized above in section 15 validates paragraph four of the agreement. We agree. Therefore, at the outset, we deem it important to focus on the constitutional grant to spouses of the right to make a written instrument exchanging between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property of such spouse. Hence, we look to the written agreement to determine if Audrian and Lillian made such an exchange. In paragraph four of their agreement, Audrian and Lillian agreed that:

> [A]ll properties of every kind and nature, real and personal, held or standing in the name of only one of them, shall be considered as the separate property of the one of them in whose names such property is held or stands, and that only properties, whether real or personal, held or standing in their joint names shall be considered as community property. In furtherance of and as an example of the foregoing, Audrian and Lillian intend to have separate bank accounts, each of which shall be considered a separate property of the one of them in whose name any such account stands. In addition, they intend to have one or more joint bank accounts, and if and to the extent that they may do so, the funds therein shall be regarded as community property.

We conclude that by such language Audrian and Lillian made the spousal exchange of their community property within the meaning and as allowed by article 16, section 15 of the Texas Constitution as it read on October 26, 1977. We reach this conclusion because we read paragraph four to provide that if earnings and income from Audrian's separate property is held or stands in his name, then that community property has been exchanged for other community property; to wit: the earnings and income from Lillian's separate property held or standing in Lillian's name. Likewise, if earnings and income from Lillian's separate property is held or stands in her name, then that community property has been exchanged for other community property; to wit: the earnings and income from Audrian's separate property held or standing in Audrian's name. Indeed, this is the agreed arrangement contemplated by Audrian and Lillian when they wrote in paragraph four that "[i]n furtherance and as an example of the foregoing [they] intend to have separate bank accounts, each of which shall be considered as the separate property of the one of them in whose name any such account stands." Moreover, we know that this controversy involves earnings and income from Lillian's separate property deposited from time to time after the marriage in Lillian's separate bank accounts. We know this because Ronald alleged in his second amended original petition that "[d]uring the marriage of [Audrian] and [Lillian], and continuing to the date of death of [Audrian], [Lillian] received income and earnings from various properties and businesses owned by her in a sum in excess of the minimum jurisdictional limits of this Court. [Lillian] deposited all such income and earnings into bank accounts, purchased stocks, bonds and made other investments in her sole name."

Nevertheless, in spite of the provisions of article 16, section 15 of the Texas Constitution in effect on October 26, 1977, Ronald insists that paragraph four is void under that article 16, section 15 of the Texas Constitution. Ronald argues that two decisions of the Supreme Court are controlling. Ronald cites *Burton v. Bell,* 380 S.W.2d 561 (Tex.1964), and *Williams v. Williams,* 569 S.W.2d 867 (Tex.1978). We disagree that *Burton* and *Williams* control. As to *Burton,* the written prenuptial agreement is not set forth in the opinion in that case. Hence, we do not know if the agreement in *Burton* provided for the exchange of community property as does the agreement in the present case. Moreover, *Burton* does not address the constitutional issue. No-

where in *Burton* is article 16, section 15 of the Texas Constitution mentioned. Instead, *Burton* held the prenuptial agreement invalid under a statutory provision. In the Supreme Court's words: "The prenuptial agreement was invalid under art. 4610 ... in that it undertook 'to alter the legal order of descent [etc.].'" *Burton*, 380 S.W.2d at 563. For these reasons, we conclude that Ronald's reliance on *Burton* is misplaced and that *Burton* is not controlling.

Next, we consider the impact of *Williams* on the present case. In *Williams*, the applicable version of article 16, section 15 before the Supreme Court was the same as in the present case. The question presented in *Williams* was "whether a premarital agreement to waive the constitutional and statutory rights of a surviving spouse to a homestead and other exempt property is valid." *Williams*, 569 S.W.2d at 868. The Supreme Court answered that the agreement to waive was valid. *Williams*, 569 S.W.2d at 870. However, the surviving spouse went on to contend that this valid portion of the agreement was vitiated by "void provisions." The asserted "void provisions" follow:

> 5. All income from the separate estate of each party, including dividends, interest, rents and salaries, and any increases, sales proceeds, reinvestments or changes in said separate estate, shall remain under control of the party receiving the same and shall be deposited in such party's separate account. It is the intent of the parties that such income, except for the personal living expenses hereinabove set forth, shall remain the separate property of each party.

*Williams*, 569 S.W.2d at 869. For the purposes of this opinion, we assume, but do not decide, that this language in the *Williams* agreement provided for the exchange of community property whereupon the community property exchanged becomes separate, as does paragraph four in the agreement in the present case. In *Williams*, the Supreme Court viewed the above portion of the agreement as void. The following is the Supreme Court's entire disposition in the matter:

> The trial court correctly concluded that the agreement was void to the extent that income or other property acquired during marriage should be the separate property of the party who earned or whose property produced such income or acquisition. Such provisions were no more than a mere agreement between the parties to establish the character of the property prior to its acquisition during marriage in violation of both the Texas Constitution and the Family Code, TEX. CONST. art. XVI, § 15; TEX.FAM.CODE ANN. § 5.01 (1975); *see Gorman v. Gause*, 56 S.W.2d 855 (Tex. Comm'n App. 1933, jdmt. adopted); *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925); *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565 (1961).

*Williams*, 569 S.W.2d at 870. Given this disposition of the matter, we hazard to conclude that in *Williams* the Supreme Court did not have before it the contention that article 16, section 15 authorized an exchange of the community interest of one spouse for the community interest of the other spouse whereupon the portion or interest set aside to each spouse shall be separate property of such spouse.[1] We reach this conclusion because the Supreme Court does not address the "exchange" language of article 16, section 15 as it would have done if the question had been raised. Hence, we are persuaded that the "exchange" question was not raised in *Williams* because the Court never mentioned that provision. In fact, the dissent quotes the first half of article 16, section 15, deleting the "exchange" provision from its partial quote. *See Williams*, 569 S.W.2d at 872 n. 1 (Chadick, J., dissenting). Consequently, we are satisfied that had the impact of the "exchange" of community interest provision been at issue in *Williams*

---

1. The Court of Appeals' opinion in *Williams* makes no mention of article 16, section 15 or the issue before us in the present case. *See Williams v. Estate of Williams*, 548 S.W.2d 492 (Tex.Civ.App.—Austin 1977), *rev'd sub nom. Williams v. Williams*, 569 S.W.2d 867 (Tex. 1978).

and been placed before the Supreme Court, the Supreme Court would have addressed the issue now before this court in the present case. For these reasons, we conclude that Ronald's reliance on *Williams* is misplaced and that *Williams* is not controlling.

In summary, we conclude that paragraph four of the prenuptial agreement is valid and not in violation of article 16, section 15 of the Texas Constitution in effect on October 26, 1977. Therefore, we conclude further that the trial court did not err in granting summary judgment in Lillian's favor. We overrule Ronald's fourth point of error.

Affirmed.