Mortimer **FREEDMAN**, Independent Executor under the Last Will and Testament of Margaret Freeman, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 22767.

United States Court of Appeals
Fifth Circuit.

Sept. 7, 1967.

J. Manuel Hoppenstein, Jerome L. Prager, Dallas, Tex., for appellant.

R. L. Dillard, Jr., Durwood D. Crawford, Gerald C. Galbraith, Dallas, Tex., for Southland Life Ins. Co., amicus curiae in support of appellant.

Melvin M. Diggs, U. S. Atty., Dallas, Tex., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Edward I. Heilbronner, Donald Williamson, Attys., Dept. of Justice, Washington, D. C., R. L. Dillard, Jr., Hermine Dalkowitz Tobolowsky, Dallas, Tex., Richard M. Roberts, Acting Asst. Atty. Gen., Washington, D. C., Martha Joe Stroud, Asst. U. S. Atty., of counsel, for appellee.

Hermine Dalkowitz Tobolowsky, Dallas, Tex., for Business & Professional Women's Club of Dallas, Inc., amicus curiae.

Before THORNBERRY and COLEMAN, Circuit Judges, and YOUNG, District Judge.

THORNBERRY, Circuit Judge.

This appeal is from a judgment of the district court denying appellant's claim for refund of estate tax in the amount of $7,081.21, plus interest.[1] The tax in question resulted from inclusion in the gross estate of Margaret Freedman, appellant's deceased wife, of one-half of the value of a $50,000 insurance policy on the decedent's life. A consideration of the applicable estate-tax provision (Int.Rev.Code of 1954, § 2042)[2] and of Texas community-property law persuaded the court below that the decedent owned one-half of the policy at the time of her death and that the estate tax was properly imposed. We affirm.

I.

In 1954, Margaret Freedman applied for a $50,000 policy of life insurance, naming appellant Mortimer Freedman as primary beneficiary. Under the terms of the policy, all values, rights and privileges would belong to the person who entered his signature as "owner" in the appropriate blank space. Mortimer Freedman signed the application in this space.[3] The policy was issued in 1954,

---

1. This lawsuit was tried without a jury. The district court had jurisdiction of the subject matter pursuant to 28 U.S.C. § 1346(a). Judgment was entered on May 13, 1965.

2. § 2042 "Proceeds of Insurance" provides as follows:
The value of the gross estate shall include the value of all property—
* * * * *
(2) * * * To the extent of the amount receivable by all * * * beneficiaries [other than the executor] as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.

3. The clause just summarized reads as follows:
Control. The ownership including all benefits, values, rights and privileges shall belong to the Owner named below, otherwise to the Proposed Insured.
The policy provided that the children would become primary beneficiaries in the event Mr. Freedman predeceased his wife. This designation of beneficiaries was not irrevocable. R., 17–18.

and all annual premiums due thereunder were paid with community-property funds. Mrs. Freedman died on May 7, 1959.

There were two other life insurance policies on decedent's life and payable to her husband as beneficiary, but on neither of the applications was a signature entered in the blank space provided for "Signature of Owner." Under the terms of the policies, the proposed insured would control the values, rights and privileges in the absence of a signature in this space.

Mr. Freedman, as independent executor under his wife's will, included half of the proceeds from each of the two policies just described in her gross estate but did not include any of the proceeds from the policy which designated him as owner. After the estate tax return together with payment had been filed, the Commissioner of Internal Revenue mailed a notice of deficiency. Appellant paid the sum demanded and then on April 23, 1963 filed a timely claim for refund in the amount of $7,081.21, plus interest. The Commissioner disallowed the claim in full on the theory that the value of the insurance policy which appellant had not included in his wife's gross estate at all should have been included to the extent of $25,417.15 (being one-half of the proceeds).

In sustaining the Commissioner's disallowance of the claim for refund, the district court entered findings of fact and conclusions of law which should be summarized. With respect to the policy which appellant signed as owner, the court found that the decedent, in her individual and separate right, did not expressly reserve the right to change the beneficiary, cancel, surrender or borrow on the policy, or retain any other incidents of ownership. Further, it found that she acquiesced in the use of community funds in payment of premiums and that she fully intended the proceeds to be payable to her husband on her death.[4]

While the decedent did not reserve the incidents of ownership in her separate right, the court nevertheless concluded that she did not make an inter vivos gift to her husband as his separate property of her community half interest in the policy. Therefore, the policy was community property at her, death and the incidents of ownership were owned in the name of the husband as agent for the community and trustee for his wife.

## II.

In 1954, Congress eliminated the so-called "payment of premiums" test for determining the includability of life insurance proceeds in the gross estate of an insured and embodied an "incidents of ownership" test in Section 2042. Under this section, life insurance proceeds payable to a beneficiary other than the executor of the decedent's estate [5] are not includable unless the decedent possessed any of the incidents of ownership at death. The Treasury regulations characterize these incidents as economic benefits such as the power to change the beneficiary, to surrender, cancel or assign the policy, to pledge the policy for a loan, or to obtain a loan against the surrender value. After examining the policy to determine whether the decedent possessed any economic benefits, the Commissioner, according to the regulations, must take the additional step of considering whether ownership can be attributed to the decedent under applicable state law.[6] If the decedent owned any

---

4. The parties stipulated that no active fraud was perpetrated on the decedent. R., 15.

5. Since Mr. Freedman was the executor, this case might appear to fall within § 2042(1), which makes life insurance proceeds includable in the gross estate to the extent that they are "receivable by the executor." However, the proceeds were not received by Mr. Freedman in his capacity as executor but rather as named beneficiary.

6. Treas.Reg. § 20.2042-1 (1958):
   * * * (2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has refer-

portion of the policy at death, then an estate tax must result.

The policy in question gave the power to exercise the incidents of ownership to the person who signed as owner or, in the absence of such a signature, to the insured. Since appellant signed as owner, he contends that his wife, the decedent, could not have exercised any of the incidents of ownership and therefore that none of the proceeds should be included in her gross estate. Whether the fact that Mrs. Freedman could not control the policy in her separate right makes inescapable the conclusion that her estate should not be liable for a tax on the transfer of any property rights in the policy depends upon the impact of state property rules.

■■ It is now settled in Texas that if life insurance is purchased by a spouse during the marriage and is paid for with community funds, the "policy rights" or incidents of ownership and the "proceeds rights" or rights to receive the proceeds in the future constitute community property. Brown v. Lee, Tex.1963, 371 S.W. 2d 694; see Davis v. Prudential Insurance Company of America, 5th Cir. 1964,

331 F.2d 346. It is fundamental that property purchased with community funds is likewise community property; and any uncertainty as to whether the meaning of "property" encompasses "life insurance and the effects thereof" was resolved affirmatively by the Texas Legislature in 1957.[7] Since the community funds of Mr. and Mrs. Freedman were used to pay the premiums due under the policy in question, it follows that the policy was owned by the marital community unless it was the subject of a gift from the community to the separate estate of Mr. Freedman.

■ If the policy belonged to the community at the time of Mrs. Freedman's death, then there is no doubt that an estate tax based upon the inclusion of one-half of the proceeds in the gross estate was proper. The operation of the estate tax on a decedent's community interest in a life insurance policy was explained with remarkable clarity by Judge Wisdom in Commissioner of Internal Revenue v. Chase Manhattan Bank, 5th Cir. 1958, 259 F.2d 231, 255. In that case the husband created an insurance trust consisting of policies on his life,

ence to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * *

* * * * *

(5) As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy * * *.

The courts and commentators have accepted the technique of examining local law to determine ownership. See Lang v. Comm'r of Internal Revenue, 1938, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331; Scott v. Comm'r of Internal Revenue, 9th Cir. 1967, 374 F.2d 154; United States v. Stewart, 9th Cir. 1959, 270 F.2d 894, cert. denied, 1960, 361 U.S. 960, 80 S.Ct. 588, 4 L.Ed.2d 542; Commissioner of Internal Revenue v. Chase Manhattan Bank,

5th Cir. 1958, 259 F.2d 231, cert. denied, 1959, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed. 2d 575; Thurman, Federal Estate and Gift Taxation of Community Property Life Insurance, 9 Stanford L.Rev. 239 (1957).

7. The 1957 amendment to Art. 23(1), Vernon's Ann.Tex.Rev.Civ.Stat. was designed to clarify questions raised by Warthan v. Haynes, 1956, 155 Tex. 413, 288 S.W. 2d 481 concerning the nature of the rights represented by an insurance policy. For a thorough analysis of the Texas cases on this subject decided prior to Warthan v. Haynes, see Commissioner of Internal Revenue v. Chase Manhattan Bank, 5th Cir. 1958, 259 F.2d 231. As the opinion in that case indicates, the Texas courts had consistently held that "policy rights" constitute property but had been unclear about "proceeds rights." The 1957 legislative action and the opinion by the supreme court in Brown v. Lee, Tex.1963, 371 S.W.2d 694, have made it clear that all rights represented by a policy are property rights. Thus, if a policy is purchased with community funds, it becomes community property.

which were paid for with community funds. The Court held that on his death his estate transferred one-half of the proceeds to the trust and the surviving wife transferred the other half. The wife incurred a gift tax; the decedent's gross estate, an estate tax:

> In a community property state where insurance on the husband's life is purchased with community funds, payable revocably to a third person beneficiary, the husband's right to change the beneficiary and all other control over the property are held as agent of the community. The bundle of rights in the policy is owned by the community. Something happens to this bundle when the insured dies, thereby terminating his control over the property and bringing the community to an end. What happens is, that the community's property interests in the policy-rights are transformed into the beneficiary's rights to the proceeds. It is a shift in control and a shift of beneficial interest. This is the transfer that is taxed.

As to the policy in the instant case, we believe that the community owned the bundle of rights or incidents of ownership at Mrs. Freedman's death and that the transfer of her interest in this property to the beneficiary was subject to tax.

### III.

Appellant contends, however, that the community did not own the policy be-cause decedent made an inter vivos gift of her community interest to her husband as his separate property. He bases this argument on the fact that he signed the application as owner and, under its express terms, had exclusive authority to exercise the incidents of ownership. He strengthens the implication of this circumstance by pointing to the two unsigned policies which his wife controlled as proposed insured and which he included in her gross estate to the extent of one-half of the proceeds. In other words, appellant asserts that he and Mrs. Freedman clearly intended the policies to be treated differently—the policy bearing his signature as owner to be his separate property and the two unsigned policies to belong to the community.

■ Property purchased with community funds is presumed to belong to the community even if title is taken in the name of one spouse only. Magee v. Young, 1946, 145 Tex. 485, 198 S.W.2d 883; Brick & Tile, Inc. v. Parker, 1945, 143 Tex. 383, 186 S.W.2d 66. To rebut this presumption, appellant must present evidence to show that the unnamed spouse intended to give her community interest to the named spouse as his separate property. Though the law in Texas is by no means clear on this point, we will assume that the wife is capable of making a gift of her community interest.[8] The fact remains that the evidence of donative intent is flimsy indeed.

---

8. While the husband, as manager of the community estate, can make gifts so long as he does not defraud the wife, it is questionable whether the wife can do so in Texas. Authority for the proposition that she can make a gift of community property consists of dictum in King v. Bruce, 1947, 145 Tex. 647, 201 S.W.2d 803, 809, 171 A.L.R. 1328 and of expressions by commentators to the effect that she can. See Fritz, Marital Property—Effects of Recitals and Credit Purchases, 41 Tex. L.Rev. 1, 2–3 (1962); Huie, Commentary, The Community Property Law of Texas, 13 Tex.Rev.Civ.Stat.Ann. 1, 28 (1959).

Appellant seems to argue that the wife's right to make a gift of her community interest in a life insurance policy was estab-lished by 13 Tex.Rev.Civ.Stat.Ann. Art. 4619, § 6 (1959), which provides in part:
\* \* \* during coverture the wife, without the joinder, participation or consent of the husband, shall have full control, management and disposition of any contract of life insurance or annuity heretofore or hereafter issued and to the extent provided by such contract or any assignment thereof
\* \* \* \* \*
This statute gives a wife the right to control a policy in her separate right if the terms of the instrument permit, but it does not expressly state that she can make a gift of a community interest. At any rate, the statute is inapplicable here because the husband had the management rights under the policy in question.

While appellant signed the application as owner, the decedent did not perform an affirmative act which would clearly reflect an intention to make a gift of her community share. It is true that Mrs. Freedman signed the application as proposed insured and thereby agreed to all the terms. Although this act arguably reflected an intention to make a gift of any interest she might have to the person designated as owner, the law places a heavier burden on one who contends that a gift was made. In the absence of a clause expressly purporting to transfer Mrs. Freedman's community interest to her husband's separate estate, it must be assumed that she merely agreed for the policy to be owned by Mr. Freedman as the community's agent. It might be conjectured that she intended to divest herself of any property interest, but the cases require more than this. In Moss v. Gibbs, Tex.1963, 370 S.W.2d 452, the wife contended that the husband had made a gift of his share of her special community property (income earned by the wife or derived from her separate property is special community property). In rejecting this contention, the Texas Supreme Court reasoned that the husband's "mere noninterference" with his wife's special community would not establish a gift of his interest. In the instant case, appellant argues that his wife acquiesced in his signing of the application as owner and did not at any time attempt to interfere with his control; but according to Moss v. Gibbs, her mere noninterference is insufficient evidence of a gift.[9] It can only be concluded that when Mr. Freedman signed the application and thereby gained control over the incidents of ownership, he did so as managing agent of the community.

In Commissioner of Internal Revenue v. Fleming, 5th Cir. 1946, 155 F.2d 204, the Court was confronted with a factual situation similar to the one before us. The policy was purchased by a Texas husband and wife in the name of the wife with community funds, but the wife had the sole right to exercise the incidents of ownership. Though the wife held the policy in her name and controlled the economic benefits, the Court found the evidence insufficient to support a finding of a gift by the husband of his community interest. In the instant case, evidence of gift is far weaker than it was in *Fleming*, because there is no reason to think Mr. Freedman was not acting in his role as manager of the community when he entered his signature as owner.[10]

## IV.

Before concluding, appellant's remaining arguments should be considered. One argument is predicated on the deletion of the "payment of premiums" test from the *Code* in 1954. Appellant says the fact that community funds are used to pay the premiums should no

---

9. In Reed v. Reed, 283 S.W.2d 311 (Tex. Civ.App.—Dallas 1955, no writ), postal savings certificates bought with community funds were held in the widow's name. The court held that a gift to the separate estate of the wife was not established by the mere fact that community funds were deposited in her name. In Johnson v. First Nat'l Bank, 306 S.W.2d 927 Tex.Civ.App.—Ft. Worth 1957, no writ), the court held that donative intent could not be inferred from the husband's practice of allowing his wife to deposit community funds in a bank account in her name. It is apparent that the Texas courts will require clear evidence that the donor intended to effect a complete transfer of title so that the donee could use community money to enrich his separate estate. Where the husband is using his managerial power to enrich his separate estate, evidence of a gift would have to be particularly convincing.

10. An instrument of assignment or deed of gift would have satisfied the evidentiary requirements for a gift. See Lamade v. Brownell, M.D.Pa.1965, 245 F. Supp. 691 where the district court held that the insured, by means of an absolute assignment, had succeeded in divesting himself of all incidents of ownership. If Mrs. Freedman had executed such an instrument, the primary question for the Court would have been whether a wife can make a gift of community property under Texas law.

longer determine the includability of proceeds in the gross estate. While this reasoning seems forceful at first blush, it wilts in the face of the proposition that payment with community funds is important where it results in community ownership. Section 2042 prescribes ownership as the test; and, according to the Treasury regulations and court decisions, state law must be considered in determining ownership. It has been demonstrated that Mrs. Freedman owned a community interest in the policy at her death; therefore, the conclusion that one-half of the value of the policy was correctly included in her gross estate is unassailable. The elimination of the "payment of premiums" test by Congress only serves to keep an estate tax from being imposed where the decedent paid the premiums but did not own any part of the policy.

Finally, appellant urges that the action of the Commissioner, if affirmed, will frustrate the national policy of tax equalization. Citing the emphasis placed upon tax equalization by the Court in the *Chase Manhattan Bank* case previously discussed, he says that if the same facts had occurred in a common-law state, none of the proceeds would have been included in the decedent's gross estate. While this point also seems persuasive, the simple answer is that a different result under community-property law is compelled because Mrs. Freedman had a property interest in Texas which she would not have had in a non-community property state. In fact, Congress recognized that an equal result is not possible in every case because of differences in property rights held by citizens of community and non-community property states. S.Rep. No. 1013, 80th Cong., 2d Sess., p. 27 (1948—1 Cum.Bull. p. 305).

Appellant ventures onto dangerous ground when he begins to assert the equities of his position. Only one-half of the proceeds from the two unsigned policies was included in Mrs. Freedman's gross estate even though she had exclusive control over the incidents of ownership under the literal terms of these policies. If it is so apparent that the decedent intended a gift of her community interest in the signed policy, why is it not equally apparent that Mr. Freedman intended a gift of his community interest in the two unsigned policies and why did he not include the total proceeds from them in his wife's gross estate?[11] We need not toil with this dilemma inasmuch as there were no gifts at all under the Texas law.

Affirmed.

---

11. As to the equities of the matter, it should further be observed that if Mr. Freedman had predeceased his wife, only one-half of the cash surrender value would have been included in his gross estate.