**Beatrice Smither PARSON, Executrix of the Will and Estate of George W. Parson, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 30726.

United States Court of Appeals, Fifth Circuit.

May 22, 1972.

Roby Hadden, U. S. Atty., Beaumont, Tex., Jerry A. Wells, Atty., Tax Div., Dept. of Justice, Ft. Worth, Tex., Scott P. Crampton, Asst. Atty. Gen., John Brown, Meyer Rothwacks, Attys., Tax. Div., Dept. of Justice, Washington, D. C., Roby Hadden, U. S. Atty., Tyler, Tex., Johnnie M. Walters, Asst. Atty. Gen., Grant W. Wiprud, Atty., Dept. of Justice, Washington, D. C., for defendant-appellant.

C. B. Wheeler, Wheeler, Watkins, Hubbard, Patton & Peek, Texarkana, Tex., for plaintiff-appellee.

Before AINSWORTH, INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

This is an appeal by the United States from a judgment by the district court sustaining a claim for refund of estate taxes paid by the estate of Dr. George W. Parson. Parson v. United States, 308 F.Supp. 1159 (E.D.Tex., 1970).

The case was submitted on a stipulation of facts which indicated that decedent Parson and his wife were married on April 24, 1926, and resided in Texarkana, Arkansas until January 1945, at which time they moved to Texarkana, Texas. They remained there as residents of Texas until decedent's accidental death on December 17, 1961.

## I.

The first issue in this case revolves around an application made by decedent, while living in Texas, for a Lumbermen's Mutual Casualty Company insurance policy. On February 20, 1958, decedent signed an application and was issued a certificate providing for payment of $50,000 upon his accidental death. The first and all subsequent premiums were paid with community funds.

Decedent, on February 20, 1958, executed the following instrument in his application for this accident policy:

"COMPLETE ONLY ONE OF THESE SECTIONS

I. THIRD PARTY OWNERSHIP

If you wish a third party, who has an insurable interest in your life, to own this certificate, complete the following statement:

THIRD PARTY OWNERSHIP—It is agreed by the person to be insured that all right and title to the insurance applied for shall vest in and every incident of ownership thereof may be exercised and enjoyed irrevocably without the consent of any other person by:

Name of Owner (PLEASE PRINT)

/s/ Mrs. Beatrice Smither Parson

(Show Given Name—Example,

Mary Jones—NOT Mrs. Edward F. Jones)

whose insurable interest is Wife

(Example, Wife, Son, Daughter, etc.)

II. "REGULAR" BENEFICIARY PROGRAM

If you wish to retain ownership of this certificate state name of person(s) to whom benefits are to be paid in case of Accidental Death.

NAME OF BENEFICIARY        RELATIONSHIP
(PLEASE PRINT)

_____        _____

(Show Given Name—Example, Mary Jones—NOT Mrs. Edward F. Jones)

Signature of Applicant /s/ Geo. W. Parson"

Upon Dr. Parson's death the full proceeds were paid to appellee Beatrice

Smither Parson as third party policy owner. The estate tax return excluded these proceeds from decedent's gross estate, but the Internal Revenue Service included one-half in the gross estate under § 2042(2) of the Internal Revenue Code.[1]

The district court held that the instrument executed by Dr. Parson was sufficient to divest himself of the "incidents of ownership" and to transfer his community interest in the policy to his wife, thus the proceeds were not includable in his gross estate.

The question before us is whether the instrument executed by Dr. Parson operated as an effective assignment or gift of his community interest in the policy.

Under § 2042(2), life insurance proceeds payable to a beneficiary (other than the executor) are includable in the gross estate if the decedent at his death possessed any of the "incidents of ownership" exercisable either alone or in conjunction with any other person. § 20.2042–1 of the Treasury Regulations defines these incidents as follows:

"(2) For purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan or to obtain from the insurer a loan against the surrender value of the policy, etc."

In addition to this determination of decedent's possession of economic bene-

1. 26 U.S.C. § 2042 provides in pertinent part as follows:
"The value of the gross estate shall include the value of all property—
(1) *Receivable by the executor.*—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) *Receivable by other beneficiaries.* —To the the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person."

fits, the Commissioner is required to consider whether ownership can be attributed under applicable state law. See Catalano v. United States, 429 F.2d 1058 (5th Cir., 1969); Freedman v. United States, 382 F.2d 742 (5th Cir., 1967). The government urges that under Texas law there is a presumption that property purchased with community funds is community property even though title is taken in the name of one spouse only, citing Magee v. Young, 145 Tex. 485, 198 S.W.2d 883 (1946); Brick & Tile, Inc. v. Parker, 143 Tex. 383, 186 S.W.2d 66 (1945), and Freedman v. United States, *supra*. The government's contention is that a Texas spouse does not make a gift of his community interest when community funds are used to buy life insurance, record title to which, though taken in the wife's name, is not limited to the use and benefit of her separate estate.

The government bases its argument primarily on Freedman v. United States, *supra*. There the decedent wife applied for a $50,000 life policy and the husband was named primary beneficiary. Under the terms of the policy all values, rights and privileges would belong to the person who entered his signature as "owner" in the blank space provided.[2] The husband signed the application in this space. All premiums were paid with community funds and on the wife's death the husband attempted to exclude all the proceeds, which were paid to him as beneficiary, from her estate. The court, however, held that even though the husband signed the policy as owner, "the decedent did not perform an affirmative act which would clearly reflect an intention to make a gift of her community share." 382 F.2d at 747. The court concluded, therefore, that:

"In the absence of a clause expressly purporting to transfer Mrs. Freedman's community interest to her husband's separate estate, it must be as-

sumed that she merely agreed for the policy to be owned by Mr. Freedman as the community's agent." 382 F.2d at 747.

Unlike the situation in *Freedman*, here Dr. Parson was forced to make a conscious decision between irrevocably assigning all rights, title and every incident of ownership to Mrs. Parson, or expressly retaining ownership and naming a beneficiary. He chose the former and Mrs. Parson received the proceeds as third party owner. Under the government's theory of the case, the proceeds would be includable in the gross estate under § 2042 either with or without the instrument Dr. Parson executed; in other words, he performed a useless act.

■ We do not view the decision in *Freedman* or Texas law as requiring this restrictive result. The court in *Freedman* recognized that the presumption of community property upon which the government relies is a rebuttable one. Thus, the court below was authorized to view the evidence and determine Dr. Parson's intention in executing the assignment of his interest. In a footnote to the *Freedman* opinion the court clarified its opinion as follows:

"An instrument of assignment or deed of gift would have satisfied the evidentiary requirements for a gift. See Lamade v. Brownell, M.D.Pa., 1965, 245 F.Supp. 691 where the district court held that the insured, by means of an absolute assignment, had succeeded in divesting himself of all incidents of ownership. If Mrs. Freedman had executed such an instrument, the primary question for the Court would have been whether a wife can make a gift of community property under Texas law." 382 F.2d at 747, n. 10.

Dr. Parson's act in the instant case was as much an assignment or deed of gift

2. The clause read as follows:
"Control. The ownership including all benefits, values, rights and privileges shall belong to the Owner named below, otherwise to the Proposed Insured."

as in the *Lamade* case;[3] all right, title, and incidents of ownership were irrevocably vested in the wife. Dr. Parson performed a positive affirmative act which the district court found clearly reflected an intention to make a gift of his community share. It makes no difference, contrary to the government's contention, that Dr. Parson achieved this at the time the policy was applied for. In Prichard v. United States, 397 F.2d 60, 64 (5th Cir., 1968), this court stated that "[a] husband may unconditionally make his wife the owner and beneficiary of an insurance policy on his life *when it is issued*, or later if he desires, so as to bar inclusion of it in his estate." See Mercantile Trust Co. Nat'l. Ass'n. v. United States, 312 F.Supp. 108, 111 (E.D., Mo., 1970). Nor does it matter that Mrs. Parson was the one who placed her name in the space designating the person to whom the policy was assigned, or that the instrument did not contain the words "for the use and benefit of her separate estate." A court must look to the realities of the situation and give effect to substance over form. Prichard v. United States, *supra*.

■ Here, the district court did not err in its holding that Dr. Parson's intent was clear and that he had performed the "affirmative act" which irrevocably transferred every incident of ownership to Mrs. Parson and effectuated a gift of his community interest to her. We thus affirm the district court's opinion with regard to this Lumbermen's Mutual Casualty Company accident policy.

## II.

A second controversy in this case involves the estate tax treatment to be accorded to fourteen life insurance policies, two of which were purchased by Dr. Parson prior to his marriage, but all of which were purchased by him prior to his establishing residence in Texas in 1945—hence, all fourteen policies were acquired while decedent was domiciled in a common law jurisdiction.

Prior to January 1945, all premiums on these policies were paid from Dr. Parson's separate property. All premiums paid thereafter were from the community funds of Dr. and Mrs. Parson. Dr. Parson possessed all the incidents of ownership on these policies at his death and the proceeds totaling $54,024.50 were paid to Mrs. Parson as beneficiary.

One-half of the proceeds was included in the gross estate in the estate tax return filed. The Commissioner of Internal Revenue included the full amount in the gross estate, less a deduction of $19,998.57 for the amount of premiums paid with community funds, but increased by $9,999.29, representing one-half of the premiums paid with community funds, on the ground that decedent beneficially owned that amount of proceeds under Texas law.[4]

The district court, however, held that the proper tax treatment was that the proceeds be includable in decedent's gross estate only in the proportion that premiums paid from decedent's separate property, plus one-half of the premiums paid from community property, bore to the total amount of all premiums paid.[5]

3. In *Lamade* the assignment provided:
"For Value Received I hereby assign Policy No. 11651016–A *And any other policy subsequently issued in lieu thereof* and pursuant to any right to convert granted therein, issued by the Metropolitan Life Insurance Company of New York on the Life of HOWARD J. LAMADE with all the proceeds thereof and all sums of money, interest, benefit and advantages whatsoever accrued and to accrue thereunder unto MURIEL B. LAMADE, address: 270 Grampian Boulevard, Williamsport, Pa., My wife, and to her executors, administrators, successors or assigns."
(Emphasis in original)

4. Under the Commissioner's deficiency notice, Dr. Parson's gross estate would thus include $44,025.21 of the insurance proceeds on these fourteen policies.

5. Under this holding the gross estate of Dr. Parson would include $37,734.58 of the proceeds.

■ The government on this appeal urges that the district court erred as a matter of law in its application of the so-called "tracing principle" to the proceeds of the fourteen policies. Bound as we are under *Erie*, we agree and reverse the district court's holding with respect to these policies.

■ Under Texas law, property acquired by a husband and wife in another state prior to their moving to Texas will retain the character of ownership it had in the state from which it was removed. McClain v. Holder, 279 S.W.2d 105, 107 (Tex.Civ.App.—Galveston, 1955), writ ref'd n. r. e. See Wrightsman v. Commissioner of Internal Revenue, 111 F.2d 227 (5th Cir., 1940); Orr v. Pope, 400 S.W.2d 614 (Tex.Civ.App.—Amarillo, 1966), no writ hist. Property which was characterized as separate at the time acquired remains separate, although subsequently paid for with community funds, subject to the community's right of reimbursement. Hode v. Ellis, 268 S.W.2d 275, 283 (Tex.Civ.App.—Ft. Worth, 1954), aff'd in part, rev'd in part, 154 Tex. 341, 277 S.W.2d 900 (1955).

The determining question is whether under the circumstances of the instant case a Texas court would apply the so-called "inception of title" approach as opposed to the tracing principle or proportionate ownership approach taken by the district court. In our opinion we have received an *Erie* gale in the form of McCurdy v. McCurdy, 372 S.W.2d 381 (Tex.Civ.App.—Waco, 1963), writ ref'd.[6] There, two insurance policies were issued to the husband on his life before marriage, naming his estate beneficiary. Part of the premiums was paid from the husband's separate funds before marriage, and part was paid during coverture from community funds. The specific and *only* issue before the court was

to resolve whether the *proceeds* of the policies belonged to the separate estate of the husband at his death only in proportion to the amount of premiums paid before marriage, or whether they belonged entirely to his separate estate with right of reimbursement to the community for premiums paid with community funds. The court chose the latter solution, the so-called inception of title rule. Having pointed out that California and Washington follow a proportionate premium formula, the court explained:

"We think our decision harmonizes with what is said to be elsewhere the general rule: 'If either spouse before marriage procures a policy of life insurance on his own or another's life, in his favor or in favor of his estate, the policy and its proceeds are his separate property. His rights to the proceeds date from the policy.' McKay, Community Property (2d ed.) Sec. 479, p. 316. It is consistent with the holdings of the Supreme Court of New Mexico, In re Miller's Estate, 44 N.M. 214, 100 P.2d 908, 910 syl. 2; and of Louisiana, In re Moseman's Estate, 38 La.Ann. 219.

"Two reasons for applying the tracing principle to give proportionate ownership of proceeds are suggested, II Texas Institutes, supra, 111: (a) simplicity; (b) just results. These are good reasons, and we have carefully considered others. It does not appear that the inception of title rule is less simple: each method requires computation of the amount of premiums paid out of community funds. Many incidental problems resulting from attempted application of the proportionate ownership rule are avoided. If simplicity be a virtue, we think the inception of title rule is simpler. It

---

6. Under Rule 483 of the Supreme Court of Texas a writ of error is refused when the judgment of the Court of Civil Appeals

is a correct one and the principles of law declared are correctly determined.

facilitates application of general principles of community property law." 372 S.W.2d at 383–384.

The court below relied on a district court opinion in Stapf v. United States, 189 F.Supp. 830 (N.D., Tex., 1960), rev'd on other grounds, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), in which the tracing principle was utilized. That case, however, was decided before the *McCurdy* opinion, which is the most recent pronouncement of Texas law. The court below attempted to distinguish *McCurdy* because estate tax principles were not there in issue. Nevertheless, the *McCurdy* court determined the ownership of the life insurance proceeds and the estate tax applies to property beneficially owned by the decedent.

The district court also attempted to distinguish *McCurdy* on the grounds that in the instant case all but two of Dr. Parson's policies were taken out after his marriage. The key factor, however, is that the policies were separate property because at the time of acquisition Dr. Parson was domiciled in a common law state.

■ We are not unmindful of the possible inequities which might arise from the slavish application of the "inception of title" rule of life insurance and other areas. Nevertheless, under *Erie* we cannot skirt the clear import of state decisional law solely because the result is harsh. See Van Pendley v. Fidelity & Casualty Co. of New York, 459 F.2d 259 (5th Cir., 1972) [at 262, 263].

The Commissioner's assessment of estate tax consequences for the fourteen life policies was correct and the judgment of the district court with respect to those policies is reversed and remanded.

Affirmed in part, reversed and remanded in part.