THE ESTATE OF ROY R. McKEE, DECEASED, RUBY O. McKEE, INDEPENDENT EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of McKee v. Commissioner
Docket No. 4858-75.
United States Tax Court
T.C. Memo 1978-108; 1978 Tax Ct. Memo LEXIS 409; 37 T.C.M. (CCH) 486; T.C.M. (RIA) 780108; March 20, 1978, Filed *409 Decedent, a resident of Texas, a community property state, made inter vivos transfers of an insurance policy and cash to his wife. The cash and insurance policy premiums were paid from community property funds. Held, decedent retained no incidents of ownership in the insurance policy under sec. 2042(2), I.R.C. 1954. Held further, under Texas law, decedent retained the right to the income from the cash for his life within the meaning of sec. 2036(a)(1), I.R.C. 1954. Estate of Castleberry v. Commissioner,68 T.C. 682 (1977), and Estate of Wyly v. Commissioner,69 T.C. 227 (1977), followed. Held further, one-fourth of the $5,000 transferred cash is included in decedent's estate. Estate of Castleberry v. Commissioner,68 T.C. 682 (1977), followed. *410 William Monroe Kerr, for the petitioner. H. Steven New and Charles R. Billings, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $2,169.68 deficiency in petitioner's Federal estate tax. [1] After concessions, the two issues are whether within the meaning of section 2042(2)[2] the decedent, at his death, possessed any incidents of ownership in a life insurance policy transferred to his wife during his life, and whether Texas community property law and section 2036(a)(1) cause any part of decedent's cash gift to his wife to be includable in his gross estate. *411 FINDINGS OF FACT All of the facts have been stipulated and are so found. Roy R. McKee (hereinafter decedent) resided in Midland, Texas, prior to his death on November 20, 1972. On June 4, 1930, decedent married Ruby *412 O. McKee, who survived him and became the executrix of his estate. During his lifetime, decedent was primarily engaged in the insurance business either as a sole proprietor or as the senior partner of the McKee Insurance Agency. Decedent purchased a number of insurance policies which he owned at death and which were included in his estate. On December 31, 1956, decedent applied to the Commercial Standard Life Insurance Company of Forth Worth, Texas (hereinafter Commercial Life), for a $10,000 life insurance policy on his life. The application, signed by the decedent, requested that his wife be named the sole beneficiary and further reflected in the Home Office Additions or Corrections space that "Ruby McKee shall be designated owner of this Policy." The last line in the small print of the application for the policy states as follows: My acceptance of any policy issued on this application will without further notice constitute a ratification by me of any correction in or addition to this application made by the company in the space provided for "Home Office Additions or Corrections." [Emphasis added.] On February 15, 1957, Commercial Life issued Policy No. 307 in the *413 amount of $10,000 naming decedent as the insured and Ruby McKee as the primary beneficiary. Paragraph 7 of the policy provided: Control--Unless the Policy otherwise provides and in the absence of a special endorsement or agreement filed with the Company creating an exception hereto, the Insured may, without the consent of any revocable Beneficiary, assign or surrender this Policy, amend or modify the same with the consent of the Company, and exercise, receive and enjoy every other right, benefit and privilege contained in this Policy. [Emphasis added.] The policy contained an amendment to the above control paragraph entitled "Endorsement for Control of Policy by Owner" which specified: The provision of this Policy, paragraph 7, entitled "Control" is hereby replaced by the following provision for "Control": RUBY McKEE, hereinafter designated as Owner shall, subject to the rights of any Assignee of record with the Company, and insofar as the laws of the state governing this Policy allow, have the right to assign or surrender this policy and exercise, receive, and enjoy every other right, benefit, or privilege contained in this Policy, or agree with the Company to any change *414 in or amendment to this Policy without the consent or joinder of the Insured or of any Beneficiary. The Insured shall not have the right to exercise, receive, and enjoy said rights, benefits, and privileges. [Emphasis added.] IN WITNESS WHEREOF The Commercial Standard Life Insurance Company has caused this Agreement to be executed at Fort Worth, Texas, concurrently with said Policy to which it is attached. /s/: Illegible / Executive Vice President On June 19, 1972, decedent gave his wife $5,000 as a combination birthday and wedding anniversary gift. The cash gift, which was made by check on a bank account containing only community property of Roy R. and Ruby O. McKee, was evidenced by the following letter: June 19, 1972 Mrs. Ruby O. McKee P.O. Box 161, Midland, Texas
Dear Ruby: I have deposited $5,000.00 to your account in the First National Bank, Midland, Texas as separate property for your anniversary, June 4th, and your birthday, June 20, 1972. With all my love, /s/ Roy Following decedent's death, June Eikenberg, his longtime secretary, collected the insurance policies on his life and transferred them to James Fitzgerald III, counsel for the estate. *415 Attached by staple to Policy No. 307 was the following note: From the desk of--Roy McKee This policy is OWNED by Ruby McKee as separate property and does NOT make part of the Estate of Roy R McKee /s/ Roy R. McKee The parties stipulated that if called as a witness, Eikenberg would testify that she was familiar with decedent's signature because of her many years as his secretary, and that, in her opinion, the above signature was the decedent's signature. Petitioner's estate tax return reported the policy as the sole and separate property of Ruby O. McKee but included in the gross estate one-half the premiums paid for the policy within three years of the date of death. The premiums for the policy were paid from the community property of decedent and his wife. The return also reported decedent's June 19, 1972, cash transfer to his wife as a $2,500 gift, no part of which was in the gross estate. The parties agree that there is no issue concerning lifetime transfers in contemplation of death within the meaning of section 2035. OPINION The first issue is whether any part of the proceeds of Policy No. 307 should be included in decedent's gross estate. The resolution of *416 this issue depends upon whether decedent possessed at his death any of the incidents of ownership in Policy No. 307. Respondent contends that decedent's gross estate includes one-half the proceeds on Policy No. 307 since, under Texas community property law, decedent possessed the incidents of ownership in his one-half community property interest at the time of his death. Petitioner contends that, under Texas law, decedent possessed no incidents of ownership in the policy. Section 2042(2)[3] requires inclusion in the gross estate of proceeds of insurance on decedent's life not receivable by or for the benefit of the estate if the decedent possessed at the date of death any of the incidents of ownership in the policy. "Incidents of ownership" is not a technical legal phrase but rather has reference to the right of the decedentinsured or his estate to the economic benefits of the policy. These benefits include the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy. Sec. 20.2042-1(c)(2), Estate Tax Regs. *417 The determination of whether decedent possessed any incidents of ownership must be made by reference to local law; in this case, the community property laws of Texas. Sec. 20.2042-1(c)(5), Estate Tax Regs.; Lang v. Commissioner,304 U.S. 264(1938); Catalano v. United States,429 F. 2d 1058, 1060 (5th Cir. 1969); Commissioner v. Chase Manhattan Bank,259 F. 2d 231, 239 (5th Cir. 1958), cert. denied 359 U.S. 913 (1959). Under Texas community property law, the husband may be found to possess the incidents of ownership in an insurance policy notwithstanding that the legal title or ownership of the policy rests with his spouse. In such a case, the wife holds title to the *418 policy as agent for the community estate and the husband still possesses a community interest in the policy which constitutes sufficient incidents of ownership to require inclusion of one-half the proceeds in his estate upon his death. See Freedman v. United States,382 F. 2d 742, 747 (5th Cir. 1967). The estate tax consequences thus turn upon whether the husband maintains a community interest in the policy or whether he has severed that interest and thereby vested his wife with a separate property interest in the full policy. Texas law also provides for presumptions relating to the ownership of community property. Of relevance here are the presumptions that property possessed by either spouse during marriage is presumed to be community property, Tex. Family Code sec. 5.02 (1975), and property purchased with community funds during marriage is presumed to be community property even though title is taken in the name of one spouse only. Magee v. Young,198 S.W. 2d 883, 884-885 (Tex. 1946); Brick & Tile, Inc. v. Parker,186 S.W. 2d 66, 67 (Tex. 1945). Life insurance is treated like any other property under Texas law. Commissioner v. Chase Manhattan Bank,supra at 245, 247. *419 The decedent's estate may overcome these presumptions by a showing that the spouse acquired the property as a gift during marriage. Tex. Family Code sec. 5.01 (1975). To establish a valid inter vivos gift the estate must present evidence to establish that the decedent intended to give the spouse his community property interest in the particular policy thereby making it her separate property. Freedman v. United States,382 F. 2d 742, 746 (5th Cir. 1967). Donative intent must be clearly reflected through some affirmative act of the donor-spouse. Freedman v. United States,supra at 747. The burden of overcoming the presumption is by clear and satisfactory evidence, mere acquiescence is not enough. Gonzalez v. Guajardo de Gonzalez,541 S.W. 2d 865, 868 (Tex. Ct. App. 1976); Moss v. Gibbs,370 S.W. 2d 452 (Tex. 1963). Under the terms of Policy No. 307, Ruby O. McKee was clearly designated the owner and had exclusive authority to exercise all incidents of ownership. Petitioner contends that, through affirmative acts, decedent made a valid inter vivos gift of his community interest in the policy to his wife as *420 her separate property. Petitioner argues that decedent's conveyance of the policy to his wife by signing the application designating her as owner and his signing a note indicating his wife was the owner of the policy constitute the affirmative acts necessary to make a valid gift of his interest under Texas law. Respondent, in contrast, asserts that Ruby O. McKee held the incidents of ownership under the policy merely as the managing agent of the community. In so concluding, respondent argues petitioner has not shown that decedent performed any requisite affirmative act necessary to transfer his community interest in the policy to his wife as her separate property. We cannot agree with respondent. Respondent's theory that decedent did not make an effective assignment of his community interest to his wife is based primarily upon Freedman v. United States,382 F. 2d 742 (5th Cir. 1967). In that case, the wife applied for insurance on her life naming her husband as beneficiary and owner of the policy. The husband was required to sign the policy as owner. All premiums were paid with community funds. The court held that even though the husband signed as owner, the *421 wife did not perform the necessary affirmative act which would clearly reflect her intention to make a gift of her community property interest. The court concluded that there was no reason to think the husband was not acting in his role as manager of the community when he signed as owner. The petitioner argues, and we agree, that this case is distinguishable from Freedman v. United States,supra, and is more analogous to Parson v. United States,460 F. 2d 228 (5th Cir. 1972). In Parson, decedent-insured applied for an insurance policy which contained an assignment instrument that was executed in favor of his wife. The assignment vested all incidents of ownership in the wife. The court noted that, unlike Freedman, decedent was "* * * forced to make a conscious decision between irrevocably assigning all rights, title and every incident of ownership to Mrs. Parson, or expressly retaining ownership and naming a beneficiary." 460 F. 2d 228, 231 (5th Cir. 1972). The decedent performed the affirmative act contemplated in Freedman when he executed the assignment. We think that the designation of Ruby O. McKee as owner of *422 the policy on the application, the amendment to control paragraph 7 of the policy, and decedent's execution of the note attached to the policy clearly manifest his intent to transfer his community interest in Policy No. 307 to his wife. As such, we believe these acts irrevocable transferred every incident of ownership to her and therefore were sufficient to effectuate a gift of his community interest. See Bintliff v. United States,462 F. 2d 403 (5th Cir. 1972). In his brief, respondent suggests that there is no evidence that decedent designated his wife as owner of the policy. He refers to the last line of the application, set out in our Findings of Fact, to create the inference that Commercial Life unilaterally and without authorization designated Ruby O. McKee as owner. Respondent argues that decedent, at best, authorized Commercial Life to name his wife as owner. Respondent's position is simply too incredible for us to believe. Decedent was skilled in selling insurance and was obviously accustomed to preparing insurance applications. We cannot believe, as respondent's argument would require us, that decedent would allow Commercial Life to unilaterally *423 designate the owner of the Policy. Absent compelling evidence to the contrary, we believe decedent took an active role in designating his wife as policy owner. In any event, our decision does not rest on this act alone. The note which was signed by decedent and found attached to the policy at his death represents an affirmative act that supports our conclusion. Respondent argues in his brief that the note attached to the insurance policy cannot serve as a foundation for an affirmative act since we accepted the note into evidence on the condition that it would not stand for the truth asserted therein. Respondent misconceives our consideration of the note. We do not accept it to establish, as it states, that Ruby O. McKee is the owner of the policy.This fact is already established by the legal terms of the policy. We hold only that the note represents an additional affirmative act by the decedent which reflects his intent to transfer his community interest in the policy. The estate tax consequences which flow from these affirmative acts are that decedent possessed no incidents of ownership in Policy No. 307 at his death and therefore no part of the proceeds is includable in his *424 gross estate. The second issue is whether, within the meaning of section 2036(a)(1), [4] Texas law causes decedent to retain for his life the right to the community income from his one-half interest in $5,000 cash [5] transferred to his wife. If so, one-fourth of the $5,000 cash transferred will be included in his estate since he retained, by operation of law, the right to income with respect to only part of the community property transferred by him. [6]Estate of Castleberry v. Commissioner,68 T.C. 682, 690-93 (1977); sec. 20.2036-1(a), Estate Tax Regs. *425 Since this case was heard, this Court has rendered its opinions in Estate of Castleberry v. Commissioner,68 T.C. 682 (1977), and Estate of Wyly v. Commissioner,69 T.C. 227 (1977), which we believe control the decision on this issue. In Estate of Castleberry, decedent made inter vivos gifts to his wife of his community one-half share in bonds. We noted that under Texas law income from separate property is community income. As such, even though the bonds became the separate property of the wife, any post-transfer income from the bonds is community property. We held that decedent's retention under Texas law of the community property interest in the income generated by the transferred property was a "right to income" within the meaning of section 2036(a)(1) which required inclusion of a portion of the value of the underlying bonds in his estate. In Estate of Castleberry at 687, the estate pointed out that, under Texas statutory law, decedent's wife had the sole management, control and disposition over the transferred property and any community income generated by the property. Consequently, the estate argued that decedent's right to *426 the community property income generated by the bonds was illusory since decedent had no assurance that any community income would ever be produced because of his wife's statutory power to invest in non-income-producing property. We held decedent's right to the income was not illusory, however, because his wife's control over any community income produced from the transferred property was not absolute. Her right of disposition over the community property was held in trust for the benefit of the community. For example, decedent or his heir could have brought an action for an accounting, were the community income used to benefit his wife's separate property. In addition, her control over the community income could not be exercised in fraud of decedent's rights as by making a gift to the third person. Similarly, in Estate of Wyly, the estate noted that the trustees were expressly authorized to invest in non-income-producing properties. Consequently, it argued decedent's community property interest in the trust income was so limited that it did not constitute a right to income within the meaning of section 2036(a)(1). We once again rejected this argument relying on our conclusion *427 in Estate of Castleberry. Estate of Wyly,supra at 232. Petitioner here argues that cash does not automatically generate income. It argues that the decedent's wife would have to take affirmative steps to invest the cash in such a manner as to yield income which would be community property income. Since Texas law does not require her to spend the cash in a way which would yield income, petitioner argues section 2036(a)(1) does not apply. As noted above, we addressed this identical argument in Estate of Castleberry v. Commissioner,supra at 687-90, and in Estate of Wyly v. Commissioner,supra at 232. As we stated in Estate of Wyly, we adhere to our conclusion in Estate of Castleberry that decedent's right to income is not illusory. Moreover, as we noted in Estate of Wyly,supra at 231. under section 2036 retention of the right to the income is the factor which will trigger inclusion of the transferred property in a decedent's gross estate. Whether a decedent actually receives such distributions or whether investment is made in income-producing property is immaterial as long as a right to the income exists. *428 See McNichol's Estate v. Commissioner,265 F. 2d 667, 671 (3d Cir. 1959). The legislative history of section 2036(a)(1) supports this analysis. The predecessor to section 2036(a)(1) read as follows: The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated-- * * *
(c) To the extent of any interest therein of which the decedent has at any time made a transfer * * * under which the transferor has retained for his life * * * (1) the possession or enjoyment of, or the income from, the property * * *. [Emphasis added.] [Sec. 302(c), Revenue Act of 1926, ch. 27, 44 Stat. 70, as amended by H.R.J. Res. 529, 71st Cong., 3d Sess. (1931).] This language was amended in 1932 to insert the "right to income" clause: To the extent of any interest therein of which the decedent has at any time made a transfer * * * under which he has retained for his life * * * (1) the possession or enjoyment of, or the right to the income from, the property * * *. [Emphasis added.] [Sec. 803(a), Revenue Act of 1932, ch. 209, 47 Stat. 279.] *429 The legislative history relating to the 1932 amendment reveals the following: The insertion of the words "the right to the income" in place of the words "the income" is designed to reach a case where decedent had the right to the income, though he did not actually receive it. This is also a clarifying change. [H. Rept. No. 708, 72d Cong., 1st Sess. 46-7 (1932), 1939-1 (Part 2) C.B. 490, 491; S. Rept. No. 665, 72d Cong., 1st Sess. 49-50 (1932), 1939-1 (Part 2) C.B. 532]. Finally, we do not believe Estate of Castleberry or Estate of Wyly may be distinguished on the basis of the types of property involved. Estate of Castleberry,Estate of Wyly, and this case involve bonds, stocks, and cash, respectively. Section 2036(a)(1) focuses on the right to income, not the character of the underlying property or the actual receipt of income. We would open the door to tax avoidance schemes if we held that a decedent could retain for his life the right to income from a transfer of cash, either by operation of law or by agreement, prearrangement or understanding, and nevertheless escape section 2036(a)(1).We would soon be faced with numerous transfers where property was *430 converted to cash prior to transfer and then later reinvested in other income-producing property. In view of these factors, we conclude decedent's right to the income from the cash was sufficient to require inclusion of a portion of the transferred cash in his estate under section 2036(a)(1). [7]
*431 Having so concluded, we must next determine whether one-half or the entire value of decedent's one-half community interest in the transferred cash should be included in his estate.In Estate of Castleberry, the husband-decedent transferred directly to his wife his community one-half interest in bonds. The wife made no transfer, retaining her own one-half community interest. Since the wife made no transfer of her one-half interest and section 2036(a)(1) does not include in a decedent's estate a life interest in property which did not arise from a direct or reciprocal transfer by the decedent, we held in Estate of Castleberry that only one-fourth of the value of the bonds was included in decedent's estate.Subsequently, in Estate of Wyly, we were faced with a situation where both the decedent and his wife transferred community property into a trust pursuant to which the income was to go to the wife for her life, with remainder to grandchildren. Thus, in contrast to Estate of Castleberry, the wife made a transfer into the trust of her community share. The decedent gave his wife a one-half life interest in the income from his share of the community, and she gave him, *432 through operation of Texas law, a one-half interest in the income from her share. We held under these circumstances that the decedent's gross estate included his full community one-half of the property transferred in trust for the benefit of his wife. Estate of Wyly v. Commissioner,supra at 233. We believe the amount to be included in decedent's estate in this case is directly controlled by Estate of Castleberry since here the wife made no transfer to decedent. Accordingly, we hold that one-fourth of the $5,000 cash transferred by decedent to his wife is includable in his gross estate under section 2036(a)(1). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Respondent would allow additional credit for state death taxes based upon the increase in value of the estate if payment is substantiated. ↩
2. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Sec. 2042(2) provides in pertinent part: The value of the gross estate shall include the value of all property-- * * *
(2) Receivable by other beneficiaries.--To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.↩
4. Sec. 2036(a)(1) provides in pertinent part: (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer * * * under which he has retained for his life * * * (1) the possession or enjoyment of, or the right to the income from, the property, * * *. ↩
5. On brief, respondent abandoned his argument that this theory applied also to Policy No. 307 if we found it to be the separate property of the wife. ↩
6. Respondent determined that the $5,000 cash transferred by decedent to his wife on June 19, 1972, was in existence on November 20, 1972, decedent's date of death. Respondent's determination carries a presumption of correctness and the taxpayer payer has the burden of proof to overcome this presumption. Welch v. Helevering,290 U.S. 111, 115 (1933); Rule 142(a) Tax Court Rules of Practice and Procedure.↩ Since petitioner did not challenge respondent's determination, it prevails.
7. Subsequent to our opinions in Estate of Castleberry and Estate of Wyly,Estate of Deobald v. United States,     F. Supp.     (E.D. La., Dec.29, 1977), was decided. Estate of Deobald held that no portion of stock transferred by decedent to his wife, from decedent's separate property, was includable in decedent's gross estate. Estate of Deobald is distinguishable from the case before us, however, since Louisiana community property laws were involved. In Louisiana, unlike Texas, a wife has the power to declare income from a gift of separate property as her separate property, therefore, the husband's community interest in the income is defeasible. La. Civ. Code Ann. art. 2386 (West). By operation of law in Texas, however, income from such separate property remains community property. Tex. Fam. Code Ann. tit. 1, sec. 5.01 (Vernon 1975); Arnold v. Leonard,114 Tex. 535, 273 S.W. 799 (1925). In Castleberry↩ at 687, as here, we relied on this indefeasible characteristic of income from the wife's separate property to include a portion of the property in decedent's estate.